Angela Rivera Quirós et als., demandantes y apelados, *v.* Sucesión de Antonio Ramos Rodríguez, demandada y apelante.

Núm. 8922.—*Sometido:* Marzo 6, 1945. *Resuelto:* Febrero 19, 1946.

710

*Francisco Parra Capó,* abogado de los apelantes; *Francisco Capó Pagán,* abogado de los apelados.

El Juez Presidente Señor Travieso emitió la opinión del tribunal.

Los demandantes, hijos y nietos de Don Marcelino Quirós y de su esposa Doña Isidora Figueroa, instaron esta dedemanda de reivindicación, en la que alegan, en síntesis, que al ocurrir el fallecimiento de Doña Isidora el día 29 de febrero de 1903 y posteriormente el de Don Marcelino, en julio 30 de 1905, los demandantes fueron declarados únicos y universales herederos de ambos causantes; que desde julio 30, 1905 los demandantes, en las proporciones que a cada uno correspondía de acuerdo con la ley, eran todos condueños proindiviso en pleno dominio y poseedores de un predio de terreno que radica en el Barrio Quebradas de Guayanilla, con cabida de 43 cuerdas, más o menos; que los demandantes, ni sus predecesores en título, jamás cedieron a persona alguna el título o derecho de posesión sobre dicho inmueble; que desde mediados del año 1921, los demandados, alegando ser herederos de doña Felícita Irizarry, sin título o derecho alguno, tomaron y han venido detentando la posesión de la totalidad de dicha finca, sin el consentimiento de los demandantes ni de sus antecesores en título; y, por último, que desde 1921 hasta la fecha de radicación de la demanda, los demandados han percibido y se han apropiado los frutos, cosechas y productos de la finca, valorados en la suma de $10,000, después de deducir los gastos de cultivo y conservación. Los demandantes suplican se les declare dueños en pleno dominio y con derecho a la inmediata posesión de la totalidad del inmueble y que se condene a los demandados a rendir cuentas de y a pagar el importe de los frutos percibidos durante el tiempo que ocuparon la finca y hasta su restitución a los demandantes.

Contestaron los demandados, empezando por negar que los demandantes hayan tenido el dominio o estado en posesión de la finca en fecha alguna posterior el 30 de julio de 1905. Alegaron que don Marcelino Quirós y su esposa doña

Isidora fueron dueños de la finca en controversia, a título de gananciales; que al morir doña Isidora, el 29 de febrero de 1903, una mitad de la finca pasó a ser propiedad del viudo, don Marcelino, pasando la otra mitad a los hijos y nietos de la difunta; que la mitad que correspondió al viudo don Marcelino fué vendida por el márshal de la Corte Municipal de Ponce en cumplimiento de una orden de ejecución de una sentencia dictada contra don Marcelino en pleito establecido contra éste por Bartolomé Toro y seguido más tarde contra sus herederos, los aquí demandados, habiendo pasado la dicha mitad de la finca al mencionado Toro por escritura de julio 10 de 1907 que le fué otorgada por el márshal; y que por escritura de marzo 5 de 1908, Bartolomé Toro vendió la mitad de la finca a Felícita Irizarry, madre de los demandados. Continúan alegando los demandados, que la participación indivisa que correspondió a doña Isidora Figueroa al disolverse por su muerte la sociedad de gananciales y que pasó a ser propiedad de sus herederos, los aquí demandantes, fué adquirida por José Antonio Ramos y Rodríguez, padre de los demandados, mediante escritura otorgada a su favor por los demandantes en fecha 22 de marzo de 1904; y que la parte correspondiente a Reinalda Quirós fué más tarde adquirida por Eugenio Rodríguez López por sentencia de abril 3 de 1917 y vendida más tarde a los demandados, viniendo de este modo los padres de los demandados y más tarde éstos, como sus herederos, a ser dueños de la totalidad del inmueble, el cual han poseído unos y otros, sin interrupción desde los años 1904 a 1905 en que fueron otorgadas las mencionadas escrituras.

Como defensas especiales alegaron los demandados la prescripción ordinaria de 20 años y la extraordinaria de 30 años.

En el acto de la vista, la Sociedad Mario Mercado e Hijos fué hecha parte demandada, en sustitución de los demandados Alfonso y Rafael Ramos Irizarry, por haber adqui-

rido las participaciones que a dichos demandados correspondían en la finca en litigio.

En noviembre 30 de 1943, la Corte de Distrito de Ponce reconsideró la sentencia por ella dictada en diciembre 30 de 1942 y en su lugar dictó otra, declarando que los demandantes son dueños de la finca que reclaman y ordenando a los demandados que dejen expedito y a disposición de los demandantes el referido inmueble y que paguen a los demandantes la suma de $10,000 por concepto de frutos percibidos, más intereses legales sobre dicha suma, costas y $600 como honorarios de abogado.

El recurso interpuesto por los demandados se basa en nueve señalamientos de errores que se alega fueron cometidos por la corte sentenciadora.

Antes de entrar a discutir los señalamientos de error, conviene que hagamos constar que de acuerdo con el árbol genealógico (*Exhibit* 1 de los demandantes), aceptado por los demandados, don Marcelino Quirós y su esposa doña Isidora Figueroa procrearon durante su matrimonio seis hijos, a quienes dieron los nombres de María Valentina, María Dorotea, María Pascuala, Jesús, Regina y María Bernarda. Jesús falleció en abril 14 de 1905, dejando como herederos a sus hijos Marcelino, Isidoro, Felícita, Juana, Jova, Bernardino, Leonor y Saturnino Quirós González. Regina Quirós Figueroa falleció el 13 de noviembre de 1900, dejando como herederos a sus hijos Juan José y Juana María Rivera Quirós. El primero murió sin sucesión y la segunda dejó como herederos a sus hijos Pedro, Simplicio, Isabel y Vicente Rivera Quirós. María Bernarda falleció en septiembre 15 de 1896, dejando como herederos a sus cuatro hijos, Dionisia (quien falleció siendo soltera), Lorenzo, Bernardino y Margarita González Quirós.

Alegan los demandados apelantes, que la corte inferior cometió error al declarar que los demandantes son dueños en común y proindivisamente de la finca reclamada,

cuando de la prueba documental incontrovertida resulta que el causante de los demandantes había vendido a Bartolomé Toro en junio 27 de 1904, veinte cuerdas de las 43 que él y su esposa poseían en concepto de gananciales; y que Jesús, María Dorotea, María Valentina y María Pascuala Quirós y Figueroa y Juan José y Juana María Rivera Quirós, habían traspasado a don José Antonio Ramos, causante de los demandados "todos cuantos derechos y acciones le correspondieran", entre otros bienes, sobre la finca de 43 cuerdas envuelta en esta controversia.

De la escritura de julio 10 de 1907 (Exhibit "B" de los demandados), presentada por éstos para probar su adquisición de la mitad que en la finca de 43 cuerdas correspondía a don Marcelino Quirós, aparece que Bartolomé Toro demandó a Quirós para que le otorgase escritura de venta de un predio de veinte cuerdas que Quirós le había vendido en 1904. Habiendo fallecido Quirós, el pleito fué seguido contra su sucesión y ésta fué condenada a otorgar escritura a favor de Bartolomé Toro. En la escritura, otorgada por el márshal, se describe el predio de veinte cuerdas que se traspasa y se dice que "la finca pertenece al demandado Marcelino Quirós, sin que puedan los comparecientes expresar el título, por ignorarlo".

Los demandados presentaron como Exhibit "C" la escritura de 5 de marzo de 1908, por la cual Bartolomé Toro y su esposa vendieron a Felícita Irizarry Ramos, madre de los demandados, el predio de veinte cuerdas que Toro adquirió mediante la escritura otorgada a su favor por el Márshal. Dichas escrituras (Exhibits "B" y "C" de los demandados) no pudieron ser inscritas por no resultar inscrito el predio de veinte cuerdas a favor de Quirós ni de la sucesión.

La prueba demuestra que Bartolomé Toro adquirió las veinte cuerdas en virtud de sentencia de la Corte Municipal de Ponce, el 11 de marzo de 1907, en una acción contra Marcelino Quirós, quien fué sustituído luego por su sucesión,

para obligarles a que le otorgaran escritura de venta de las veinte cuerdas. Que dichas veinte cuerdas formaban parte de la finca de cuarenta y tres cuerdas que ahora reclaman los demandantes, lo demuestra la declaración del demandante Bernardina González Quirós, quien, a preguntas de su propio abogado, declaró que en el año 1907 hubo un pleito en la Corte Municipal en relación con la finca ahora reclamada, en el que Bartolomé Toro reclamaba de Marcelino Quirós que le otorgara escritura de veinte cuerdas.

De la prueba aparece también que en el año 1916 los demandantes demandaron a la causante de los demandados para reivindicar la misma finca que ahora nos ocupa. Entonces alegaban los demandantes (1) Que la sucesión de Marcelino Quirós era dueña de una finca de 63 cuerdas. (2) Que Bartolomé Toro adquirió 20 cuerdas de *esa finca* mediante la sentencia de la Corte Municipal de Ponce de 11 de marzo de 1907. (3) Que en virtud de esa sentencia Bartolomé entró en posesión de *toda* la finca de 63 cuerdas. (4) Que los demandantes son únicos dueños de las 45 cuerdas *restantes*.

Ahora, en su nueva demanda de reivindicación, dicen los demandantes que desde *julio 30 de 1905* (fecha en que murió Marcelino Quirós) estuvieron en posesión de la totalidad de una finca de *43 cuerdas,* la cual hubieron por herencia de su padre Marcelino Quirós; que esa finca de *43 cuerdas* está inscrita en el registro a nombre de *Marcelino Quirós;* y que fueron desposeídos de esa finca, no en el 1907 como antes alegaron, sino en el 1921.

La prueba de los demandantes demuestra que la finca en controversia está inscrita a nombre de Marcelino Quirós *desde el 1886* como una finca de *43 cuerdas.*

Resulta, pues, que la finca que reclaman los demandantes, de 43 cuerdas, es la misma que los demandantes en el 1916 describieron como de 63 cuerdas. Desde mucho antes de surgir controversia alguna entre las partes o sus causantes, aparece inscrita como una finca de 43 cuerdas. Parece

obvio que en el 1916 se describió con una cabida de 63 cuerdas con el único fin de evadir los efectos de la sentencia que adjudicó veinte cuerdas de esa finca a Bartolomé Toro. No es ése el único recurso empleado por los demandantes en su empeño de establecer título a la finca. Su demanda ahora alega, y los demandantes se obstinaron en declarar bajo juramento, que estuvieron en posesión hasta el 1921. Su demanda en 1916 alega que fueron desposeídos en el 1907. Es obvio que las alegaciones de la última demanda, y la prueba que se adujo en su apoyo, en cuanto a la fecha en que fueran desposeídos los demandantes, tuvieron como único fin el de destruir el título que por prescripción adquisitiva pudieran tener los demandados. Basta para ello leer la declaración del demandante Bernardino González Quirós, quien dice que tiene (en el año 1941 en que se celebró el juicio) 48 años, que él y sus hermanos vivieron en la finca hasta el 1921, que su abuelo murió (eso fué en el 1905) y "al poco tiempo nos desaforaron", y que tendría 14 ó 15 años cuando les hicieron salir de la finca, pero que luego insiste en que no fueron desposeídos hasta el 1921, fecha que es la única que parece recordar el testigo. Luego, su propio abogado le dice: "Diga la verdad; más claro. Si hubo algún pleito o algo así", contestando el testigo "Pleitos hubo". Recuérdese que en el 1916 los demandantes alegaron que fueron desposeídos en el 1907 como consecuencia del pleito en la corte municipal en que se adjudicaron veinte cuerdas de la finca a Bartolomé Toro.

La conclusión más razonable es que las veinte cuerdas forman parte de la finca de 43. La corte inferior erró al resolver que los demandados no habían probado que tuvieran título sobre veinte cuerdas de la mitad que correspondía a Marcelino Quirós en la finca de 43 que se reclama.

▉▉▉ Con el propósito de establecer su alegado justo título sobre la mitad de la finca de 43 cuerdas, que correspondía a doña Isidora Figueroa de Quirós en concepto de

gananciales, los demandados presentaron (Exhibit "A" de los demandados) la escritura de 22 de marzo de 1904, por la cual Jesús, María Dorotea, María Valentina y María Pascuala Quirós y Figueroa y Juan José y Juana María Rivera Quirós, hijos de Regina Quirós y Figueroa, todos mayores de edad, en su carácter de herederos ab intestato de doña Isidora Figueroa, cedieron y traspasaron a favor de José Antonio Ramos, causante de los demandados, cuantos derechos y acciones puedan corresponder a dichos herederos sobre la finca de 43 cuerdas y sobre otro predio de 12 cuerdas, "quedando el cesionario subrogado en el propio lugar, grado y prelación de los cedentes". La inscripción de dicha escritura fué denegada "por no resultar inscritos a nombre de los cedentes los derechos por los mismos cedidos a don José Antonio Ramos". La corte inferior admitió el documento, pero resolvió que la referida escritura sobre cesión de derechos y acciones "no puede ser considerada", por la razón de que no estando inscrita en el Registro de la Propiedad no puede perjudicar los derechos de terceros. Citó en apoyo de su decisión el artículo 389 de la Ley Hipotecaria y las decisiones de este Tribunal en *Khon* v. *Martínez,* 40 D.P.R. 40, 42 y *Alvarez* v. *Sucesión Chavier,* 13 D.P.R. 73.

El artículo 389 de la Ley Hipotecaria provee que no se admitirá en los tribunales "ningún documento o escritura de que no se haya tomado razón en el registro, por el cual se constituyeren, transmitieren, reconocieren, modificaren o extinguieren derechos sujetos a inscripción, según la misma ley, si el objeto de la presentación fuese hacer efectivo, en perjuicio de tercero, el derecho que debió ser inscrito".

En *Alvarez* v. *Sucesión Chavier,* supra, se trataba de una acción reivindicatoria en la que el demandante alegó que había adquirido la finca en virtud de una escritura pública que no había sido inscrita. La corte inferior sostuvo la excepción previa general, basándose en los requisitos del artículo 389 de la Ley Hipotecaria. Al revocar la sentencia se re-

solvió que el citado artículo no era aplicable "porque el demandante no ha presentado a la corte ningún documento que había sido admitido en el registro y que debió haber sido admitido en el registro y que debió haber sido rechazado, y además, no aparece que el demandado, con respecto al demandante, debía considerarse como tercero. Se resolvió, además, que "el demandado no puede considerarse como tercero hasta que no haya sido probado a satisfacción de la corte que él tiene inscrito en el registro de la propiedad algún título real sobre los bienes de que se trata".

La acción ejercitada en *Khon* v. *Martínez*, supra, fué también la reivindicatoria. El demandado señaló como error de la corte inferior el no haber considerado como evidencia admisible cierta escritura presentada por el demandado apelante, por no hallarse inscrita en el registro de la propiedad. Se confirmó la sentencia apelada, resolviéndose que "si el demandado está efectivamente ocupando la parcela que el demandante reclama y comprendida dentro del título de éste, entonces no podía tampoco presentar ese título para contradecir o impugnar el título del demandante, porque se opone a ello el precepto terminante del artículo 389 de la Ley Hipotecaria cuyo texto es claro y terminante".

La situación legal en el caso de autos es completamente distinta a la de los casos que acabamos de analizar. La posesión de la finca de 43 cuerdas que reclaman los demandantes aparece inscrita desde el 26 de julio de 1886 a nombre de Marcelino Quirós y Centeno, causante de los demandantes. Habiendo Quirós adquirido la finca durante su matrimonio con Isidora Figueroa, al fallecer ésta en febrero de 1903, una mitad proindivisa de la finca pasó a ser propiedad de Quirós como gananciales, pasando la otra mitad, como herencia materna, a sus hijos y nietos, los demandantes en esta acción. En marzo 22 de 1904, con posterioridad al fallecimiento de doña Isidora Figueroa, los hijos y nietos de dicha difunta,—con excepción de los tres hijos de María Ber-

narda Quirós y Figueroa (fallecida en septiembre 15, 1896) —quienes habían sido declarados sus herederos ab intestato por auto de febrero 27 de 1904, cedieron todos sus derechos y acciones como tales herederos, sobre la finca de 43 cuerdas y sobre otra parcela, a José Antonio Ramos, padre de los demandados, consignándose dicha cesión en la escritura pública ofrecida como Exhibit ''A'' de los demandados y rechazada por la corte inferior. La descripción que se hace en dicha escritura de la finca de 43 cuerdas es idéntica a la que aparece en el registro en la primera inscripción de dicho inmueble a favor de Marcelino Quirós y a la que se inserta en la demanda. La inscripción de la escritura de cesión fué denegada por no aparecer inscritos a favor de los cedentes los derechos y acciones por ellos cedidos, tomándose la anotación preventiva correspondiente.

¿Son aplicables a los hechos que hemos expuesto, los preceptos del artículo 389 de la Ley Hipotecaria? Opinamos que lo son en cuanto a aquellos herederos—los hijos de María Bernarda Quirós y Figueroa—que no fueron partes en el documento de cesión de derechos y acciones; y que no lo son en cuanto a los herederos que cedieron sus derechos y acciones como tales sobre el inmueble en litigio. Dichos herederos cedentes no pueden ser considerados como terceros en cuanto a su cesionario y a sus herederos o causahabientes, porque ellos intervinieron en el contrato de cesión que los demandados han presentado como base de su alegado derecho a la posesión. Si los herederos hubiesen hecho otra cesión a favor de otra persona y el cesionario hubiese inscrito su derecho, ese cesionario sí sería un tercero contra el cual ni José Antonio Ramos ni sus herederos tendrían derecho a presentar su título no inscrito. El documento rechazado colocó a Ramos y a sus herederos en la misma posición legal que antes de su otorgamiento ocupaban los herederos cedentes. Una vez adquiridos los derechos y accio-

nes cedidos por dicha escritura, los cesionarios adquirieron el derecho que sus cedentes tenían para solicitar la inscripción de la participaciones que a cada uno de ellos correspondía en la herencia materna y la inscripción de la cesión de esas mismas participaciones a favor del adquirente. *Carle Dubois* v. *Benítez,* 46 D.P.R. 188, 193.

La corte inferior erró al rechazar el documento Exhibit "A" de los demandados y al no reconocer su efecto y validez en contra de los otorgantes y sus causahabientes.

■■ Según el análisis de la prueba que acabamos de hacer resulta que los demandados son dueños, no sólo de las 2/5 partes de la finca que adquirieron de la mayoría de los herederos de Isidora Figueroa, sino también de la mitad de la finca que pudo corresponder a Marcelino Quirós, o por lo menos de 20 cuerdas adicionales. Pero aún así, tendríamos que los demandados nunca compraron la décima parte de la finca que correspondía a María Bernarda Quirós, y luego a sus herederos Lorenzo, Bernardino y Margarita González Quirós.

Creemos, sin embargo, que toda la prueba demuestra que los demandados tienen título a ese condominio de una décima parte, y en verdad a toda la finca, por prescripción adquisitiva extraordinaria.

La prueba es terminante al efecto de que los demandados y sus causantes han poseído la *totalidad* de la finca, en concepto de dueños, y en forma abiertamente hostil a las pretensiones de los demandantes y sus causantes, desde el 5 de julio de 1907, o sea, más de 30 años antes de radicarse la demanda el 2 de agosto de 1938.

Es cierto que en el año 1916 los demandantes radicaron demanda de reivindicación, pero esa demanda fué declarada sin lugar, luego de presentada la prueba de los demandantes y por la insuficiencia de ésta, el día 31 de octubre de 1917.

Por lo tanto, la demanda del año 1916 no interrumpió la prescripción, de acuerdo con las disposiciones expresas del artículo 1846 del Código Civil (Ed. 1930).

Ya hemos hecho constar que los demandados y sus causantes han poseído la finca en controversia por más de 30 años, en concepto de dueños, y surge también de la prueba que esa posesión ha sido pública, pacífica y no interrumpida y que al tomar posesión la causante de los demandados tenía título, por compraventa, a ciertos condominios de la finca únicamente, correspondiendo los otros a los demandantes o a algunos de ellos.

El artículo 1833 del Código Civil (Ed. de 1930) dispone que la prescripción ganada por un copropietario o comunero aprovecha a los demás, y el 1865 que no prescribe entre condueños la acción para pedir la división de la cosa común.

Ninguno de los dos citados artículos, que se fundan en la regla general de que la posesión de un condueño no excluye los derechos de los demás condueños, es aplicable al caso de autos, donde las alegaciones y la prueba demuestran que los demandados poseen desde el 1907 en forma abiertamente hostil a las pretensiones de los demandantes, y como únicos dueños.

Comentando el artículo 1965 del Código Civil Español, igual al 1865 del nuestro, Manresa acepta que la regla general de que un condueño no puede adquirir por prescripción los derechos de sus condueños, está sujeta a la excepción del caso en que el condueño posee en forma abiertamente adversa a los derechos de sus condueños, diciendo (12 Manresa 858):

"Sin embargo, la imprescriptibilidad de la acción para pedir la división de la herencia, conocida en el derecho romano con el nombre de *familiae erciscunde,* no puede invocarse cuando uno de los coherederos ha poseído toda la herencia en concepto de dueño y por tiempo suficiente para ganarla por prescripción, porque la expresada acción

descansa necesariamente en la posesión de consuno o *proindiviso* de los bienes hereditarios, según se halla reconocido por el mismo Tribunal en sentencia de 15 de abril de 1904. También tiene declarado éste, en sentencia de 21 de mayo del mismo año, que 'probado, a juicio del Tribunal *a quo,* que no pertenecían a una herencia indivisa los bienes controvertidos, sino que eran propiedad individual de determinada persona, no puede invocarse útilmente contra ésta el principio de la imprescriptibilidad de la acción antes citada'; cuyo principio es el fundamento de la prohibición consignada, en cuanto a la misma, en el mencionado art. 1965. Además, debe tenerse en cuenta que, como se halla declarado en sentencias del propio Supremo Tribunal de 15 de enero de 1902 y de 22 de junio de 1904, la acción entre coherederos o condueños para pedir la partición de la herencia o la división de un fundo, a que se refiere dicho artículo, es independiente de la acción reivindicatoria ejercitada sobre la propiedad *pro solido* del mismo fundo, y realmente si de lo que se trata es de reivindicar bienes de la herencia o parte alguna de finca común y no de la partición de ellos, no será aplicable la prohibición contenida en el artículo citado.''

En Filipinas, cuyo Código Civil contiene disposiciones idénticas a las del nuestro y del español que se acaban de citar, se ha resuelto repetidas veces que, aunque la regla general es que un condueño no puede adquirir por prescripción los derechos de los otros condueños, la regla no es aplicable cuando se demuestra que el condueño ha poseído en forma abiertamente hostil a los derechos de los otros. *Casañas* v. *Roselló,* 50 Jur. Fil. 101; *Ramos* v. *Ramos,* 45 Jur. Fil. 379; *De los Santos* v. *Santa Teresa,* 44 Jur. Fil. 856; *De Castro* v. *Echarri,* 20 Jur. Fil. 23.

El carácter abiertamente hostil a las pretensiones de los demandantes que siempre revistió la posesión de los demandados aparece elocuentemente expuesto por los propios demandantes en la demanda que radicaron en el 1916, y en la que se radicó en el caso de autos. Por lo tanto opinamos que los demandados han acreditado que son dueños de la totalidad de la finca por prescripción extraordinaria.

*La sentencia recurrida debe ser revocada y en su lugar dictarse otra declarando sin lugar la demanda, con costas a los demandantes.*

Los Jueces Asociados Sres. De Jesús y Córdova no intervinieron.