Domingo Alameda Martínez, recurrente, *v.* El Registrador de la Propiedad de San Germán, recurrido.

Número 1290.
*Sometido:* 26 de enero de 1953. *Resuelto:* 10 de marzo de 1954.

*Luis López de Victoria,* abogado del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del tribunal.

Don Alberto Cesari Bacó y doña María Laura Lorenzi Pietri contrajeron matrimonio en la ciudad de Yauco, Puerto Rico, el día 8 de junio de 1945. Por escritura número ciento setenta y siete, de siete de junio de 1946, ante el notario don Luis López de Victoria, don Domingo Alameda Martínez y su esposa doña América Román de Alameda, constituyeron hipoteca sobre ciertos inmuebles, en garantía de un préstamo, a favor de don Alberto Cesari Bacó. Por sentencia del 18 de abril de 1952 del Tribunal de Distrito de Puerto Rico, Sección de Ponce, se decretó el divorcio de don Alberto Cesari Bacó y doña María Laura Lorenzi Pietri. Por escritura número ciento cincuenta y cinco, de diecisiete de junio de 1952, ante el notario don Luis López de Victoria, los anteriores cónyuges don Alberto Cesari Bacó y doña María Laura Lorenzi Pietri, otorgaron una cancelación total de la hipoteca, que a favor de la sociedad de gananciales constituída por ellos, habían otorgado don Domingo Alameda Martínez y su esposa doña América Román de Alameda.

Presentada dicha escritura al Registro de la Propiedad de San Germán, el Registrador de San Germán señor Juan Juan Toro, procedió a inscribir dicha cancelación mediante el siguiente asiento:

"Hecha la cancelación de hipoteca que comprende este documento, con vista de otro, por nota al margen de la inscripción 5a, de la finca número 3362, al folio 220 V. del tomo 79 de Yauco, habiéndose practicado dicha cancelación, *sujeta a la resulta de la liquidación de la sociedad de gananciales habida entre Alberto Cesari Bacó y María Luisa Lorenzi Pietri,* en lo que respecta al crédito que se cancela."

Don Domingo Alameda Martínez presenta este recurso gubernativo, alegando que el señor Registrador de la Propiedad de San Germán erró "al considerar necesaria la previa liquidación de una sociedad de gananciales para que los ex-cónyuges puedan disponer libremente de los bienes que forman el caudal hereditario."

■■ Nuestro tribunal ha adoptado la regla liberal, que disuelta la sociedad de gananciales por muerte de uno de los cónyuges o por divorcio, cualquier cónyuge supérstite, o cualesquier de los dos cónyuges divorciados, o ambos conjuntamente, puede vender, ceder o hipotecar cualesquier derechos y acciones, participación título o interés que puedan tener en los bienes gananciales de la sociedad pendiente de liquidación cuando dichas enajenaciones se hagan sobre porciones indeterminadas de los bienes gananciales *y sujetas siempre a las resultas de la liquidación de la sociedad de gananciales: Becerra v. El Registrador de Guayama,* 27 D.P.R. 843, (Hutchison), (1919), cita precisa a la página 844, referente a una hipoteca constituída por un cónyuge supérstite; *Allende v. El Registrador de San Juan, Sección Primera,* 28 D.P.R. 569, (Del Toro), (1920), cita precisa a la página 569, referente a una hipoteca constituída por un cónyuge supérstite; *Muñoz v. Registrador de Caguas,* 30 D.P.R. 70, (Del Toro), (1922), cita precisa a la página 72, referente a una hipoteca constituída por un cónyuge supérstite; *Maldonado v. Registrador,* 45 D.P.R. 841, (Hutchison), (1933), cita precisa a la página 842, referente a un traspaso de condominio por una cónyuge divorciada; *Pérez v. Registrador,* 62 D.P.R. 789, (Travieso), (1944), cita precisa a la página 792, referente a una venta

realizada conjuntamente por dos cónyuges divorciados; *Méndez* v. *Registrador*, 63 D.P.R. 221, (Snyder), (1944), referente a una venta realizada conjuntamente por dos cónyuges divorciados; *Vega* v. *Tossas*, 70 D.P.R. 392, (Negrón Fernández), (1949), cita precisa a la página 395, referente a una venta, cesión y traspaso de todos sus derechos y acciones realizadas por un cónyuge divorciado.

Cuando se examina cuidadosamente dicho principio, se comprende que nuestra regla a tal efecto, ha estado siempre basada en el supuesto, que cualquiera enajenación de un bien ganancial sujeta a las contingencias de la liquidación de la sociedad de gananciales, constituye más bien la cesión de un valor indeterminado o un valor probable dentro de cierta porción de bienes, que una enajenación de valores líquidos o específicos dentro de la misma porción de bienes.

En este caso se trata de la cancelación total de una hipoteca, propiedad de la sociedad de gananciales, otorgada conjuntamente por dos cónyuges divorciados. La cancelación de una hipoteca constituye un acto de dominio y una enajenación: *Pillich* v. *Registrador*, 68 D.P.R. 561, (De Jesús), (1948), cita precisa a la página 565; *Baquero et al.* v. *El Registrador* 22 D.P.R. 24, (Aldrey), (1915), cita precisa a la página 26. Una cancelación de hipoteca sujeta a las contingencias de la liquidación de una sociedad de gananciales, equivale, en realidad de derecho, a una cesión de los probables o indeterminados derechos y acciones que sobre dicho crédito hipotecario puedan tener ambos cónyuges, pero no equivale a dejar liberado al deudor de su responsabilidad ante otras personas.

¿Cuál puede ser, en puridad de derecho, la limitación a la capacidad de los cónyuges divorciados, antes o durante la liquidación de una sociedad de gananciales, para otorgar una cancelación de hipoteca que libere totalmente de toda ulterior responsabilidad, a un deudor hipotecario? Para

una mejor exposición de la cuestión litigiosa es conveniente acotar la institución de derecho civil correspondiente en su totalidad.

El artículo 97 del Código Civil de Puerto Rico establece que "el divorcio sólo puede ser *concedido mediante juicio en la forma ordinaria*" y por sentencia dictada por un tribunal; el artículo 101 del mismo código establece que "desde el día en que *el procedimiento de divorcio se inicie judicialmente* no será válida ninguna deuda contraída por el marido o por la mujer, sin la autorización del tribunal a cargo de los bienes gananciales"; el artículo 105 del mismo Código establece que "el divorcio lleva consigo la ruptura completa del vínculo matrimonial *y la separación de propiedad y bienes* de todas clases entre los cónyuges"; el artículo 1328 del mismo Código, extractado en su parte pertinente al presente caso, establece, que "para que se decrete la separación *bastará presentar la sentencia firme que haya recaído contra el cónyuge culpable*"; el artículo 1329 del mismo código establece que "acordada *la separación de bienes,* quedará disuelta la sociedad de gananciales, y se hará su liquidación de acuerdo con este Código; "el artículo 1330 del mismo Código establece que "la demanda de separación de bienes en caso de divorcio y la sentencia firme en que se declare, se deberán anotar e inscribir respectivamente en los registros de la propiedad que corresponda, si recayere sobre bienes inmuebles"; el artículo 1331 del mismo Código establece que "la separación de bienes *no perjudicará a los derechos adquiridos con anterioridad por los acreedores;* el artículo 28 de la Ley núm. 24 de 22 de abril de 1931 (pág. 229), disponiendo lo necesario para la inscripción de nacimientos, casamientos y defunciones establece "que en todos los casos, en que una corte dicte sentencia decretando un divorcio, el Secretario de dicha corte tendrá el deber de enviar al Comisionado de Sanidad de Puerto Rico, libre de derechos, una copia certificada de la sentencia, a los efectos de formalizar una estadística de divorcio"; disponiéndose

además que la información que contenga dicha sentencia *será usada para propósitos estadísticos solamente*; el artículo 6 del Código de Comercio de Puerto Rico, establece que "la mujer casada podrá dedicarse libremente al comercio o a la industria sin otras formalidades que las requeridas para los comerciantes varones", quedando obligados a la resultas del comercio o industria a que se dedicare la mujer, sus bienes privativos, los frutos, rentas e intereses de dichos bienes, los beneficios que se obtengan como consecuencia inmediata y directa de la industria o tráfico a que se dedicare, y los bienes que adquiriere con dichos beneficios, pudiendo enajenar todos esos bienes sin consentimiento del marido, y es sólo en el caso que mediare el consentimiento tácito o expreso del marido, que los bienes gananciales quedarían obligados a las resultas del ejercicio del comercio o industria por la mujer, pero siempre que así lo desee, el marido puede expresar su voluntad por escrito de que dichos gananciales no queden obligados; el artículo 15 del mismo Código, referente a las operaciones que se harán constar en el registro mercantil, establece en su inciso 7, que en la hoja de inscripción de cualquier comerciante, se pueda hacer constar "el consentimiento expreso del marido a que se refiere el artículo 6"; el inciso 8 del mismo artículo establece, que en el registro mercantil también debe hacerse constar, la revocación de la licencia dada a la mujer para comerciar.

Para la discusión de la cuestión litigiosa debemos asimismo, dejar previamente establecida la concordancia que existe entre el artículo 105 del Código Civil de Puerto Rico, que trata de los efectos del divorcio y es el que dispone, que el divorcio lleva consigo *la separación de propiedad y bienes de todas clases entre los cónyuges* y el artículo 101 del mismo código, que es el que especifica, que desde el día en que el procedimiento de divorcio se inicie judicialmente no será válida ninguna deuda contraída por el marido o por la mujer sin autorización del tribunal, con los artículos 1328, 1329, 1330 y 1331

del mismo Código que establecen respectivamente, (1) la facultad del marido o de la mujer para solicitar la separación de bienes, con la simple presentación de la sentencia firme que haya recaído, (2) la disolución de la sociedad de gananciales y su liquidación, conforme a lo establecido por el Código, (3) la necesidad de inscribir en el registro de la propiedad tanto la demanda de separación,—en casos de divorcio, suele siempre ser la misma demanda donde se solicita también el divorcio propiamente dicho, o sea, la ruptura del vínculo matrimonial—, como la sentencia firme en que se declare, si recayere sobre bienes inmuebles y (4) la salvedad que la separación de bienes no perjudicará a los derechos adquiridos por los acreedores, con anterioridad al día en que el procedimiento de divorcio se inicie judicialmente.

También sería conveniente dejar previamente establecido el hecho, que la institución de derecho civil nuestra que establece, como uno de los efectos del divorcio, la separación de bienes, no es totalmente española ni totalmente francesa, y por el contrario, tiene algunas modalidades netamente puertorriqueñas. Por ejemplo, el artículo 97 del Código Civil nuestro, que es el que regula el procedimiento para el divorcio, es equivalente sólo en parte con el artículo 67 del Código civil español; el artículo 101 del Código Civil nuestro, que es el que establece, que desde el día en que el procedimiento de divorcio se inicie judicialmente, no será válida ninguna deuda contraída por el marido o la mujer sin la autorización del tribunal, no tiene equivalente en España, pues por el contrario, los artículos 1435 y 1436 del Código Civil español, establecen un sistema de administración distinta mientras la separación se litiga, y es parcialmente parecido al artículo 150 de Louisiana y al artículo 271 del Código Napoleón, que declaran la nulidad de cualquiera deuda o disposición de propiedad hecha por el marido, después de iniciado el procedimiento, si se probara que tal deuda o disposición de propiedad se hizo, con el propósito de defraudar los derechos de su mu-

jer; el artículo 105 del Código Civil nuestro, que estatuye que el divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges, no tiene equivalente en el Código Civil español y concuerda sólo en cuanto a la ruptura del vínculo con el de Louisiana; por el contrario los artículos 1328, 1329, 1330 y 1331 del Código civil nuestro, concuerdan exactamente con los artículos 1433, 1434, 1437 y 1438 del Código civil español y no tienen equivalencia en el Código civil de Louisiana.

Para determinar la limitación de la capacidad de los cónyuges divorciados, antes o durante la liquidación de una sociedad de gananciales, para realizar la enajenación que implica una cancelación de hipoteca, debemos determinar también previamente, quiénes pueden ser los verdaderos interesados en la liquidación de una sociedad de gananciales disuelta por divorcio, cuyos intereses pudieran ser afectados por tal enajenación:

"Son interesados los cónyuges, o el que de ellos sobreviva y los herederos del otro, *y los acreedores de la sociedad, si los hay, en cuanto no tengan cumplidamente asegurado su derecho con hipoteca. Como no siempre existen tales acreedores, cuando no los hay, basta la conformidad de los interesados conocidos,* que lo son siempre el cónyuge viudo y los herederos del premuerto justificando su carácter. Es más: en la práctica se admiten a inscripción los actos de enajenación o gravamen de bienes gananciales en estas condiciones, *sin investigar si existen o no acreedores,* ya por no poder exigirse la prueba de esa condición negativa de la no existencia, *ya por estimar que en todo caso quedan a salvo los derechos de los acreedores contra la sociedad."* 9 Manresa 721, primer párrafo, (Quinta Edición del Instituto Editorial Reus), (1950).

En este caso, por tratarse de unos cónyuges divorciados, las únicas personas realmente interesadas en la liquidación de la sociedad de gananciales serían: (1) los dos cónyuges y (2) los acreedores no asegurados de la sociedad de ganancia-

les, *si se tratara de deudas* contraídas *antes de iniciarse la acción judicial de divorcio.* Es indudable que al inscribir el señor Registrador de la Propiedad de San Germán, la cancelación de hipoteca, "sujeta a la resulta de la liquidación de la sociedad de gananciales" estaba pensando solamente en los posibles intereses de los anteriores acreedores no asegurados de dicha sociedad. Tal vez al actuar así lo indujo el razonamiento incluído en el caso de *Pérez* v. *Registrador*, 62 D.P.R. 789, cita precisa a la página 795, donde dijimos:

"No creemos que pueda presentarse una seria objeción en contra del temperamento liberal adoptado por esta Corte Suprema, a partir de su decisión en *Allende* v. *Registrador de San Juan, Sección Primera*, supra. En realidad, la situación legal del acreedor mejora con la aplicación de esta regla. El acreedor cuyo crédito no está garantizado por gravamen sobre los bienes gananciales, no tiene protección alguna contra un traspaso bona fide que de sus bienes puedan hacer los cónyuges durante la existencia de la sociedad de gananciales. Al permitir a los cónyuges ya divorciados o al cónyuge sobreviviente que traspasen o graven los bienes gananciales, sin exigir la previa liquidación de la sociedad, pero con la condición de que el traspaso o gravamen se inscribirá con las reservas que ya hemos indicado, *se está dando al acreedor una garantía que antes no tenía,* pues ese acreedor podrá dirigirse contra esos bienes así inscritos, y no tendrá que probar que el traspaso fué hecho sin que mediara justo precio o causa suficiente."

Para examinar la exactitud de esta última afirmación, debemos esclarecer los derechos de que gozan los acreedores no asegurados, dentro de cualesquiera operaciones que realicen con una sociedad de gananciales que resulta posteriormente disuelta por divorcio.

De acuerdo con el artículo 1296 del Código Civil de Puerto Rico, la sociedad de gananciales queda constituída y empieza a funcionar desde el mismo día en que se celebre el matrimonio, siendo exigibles contra dicha sociedad, de acuerdo con el artículo 1308, todas las deudas y obligaciones contraídas durante dicho matrimonio por el marido, y también las que

contrajere la mujer, en los casos en que pueda legalmente obligar a la sociedad de gananciales.

La renuncia a la sociedad de gananciales no puede hacerse durante el matrimonio, sino cuando medie separación judicial, de acuerdo con el artículo 1297, debiéndose hacer constar por escritura pública tal renuncia, en cuyo caso, los acreedores tendrán el derecho que les concede el artículo 955 del mismo Código, o sea, pedir al tribunal competente que les autorice a subrogarse en los derechos que en tal sociedad, le habrían correspondido al renunciante. Como la sociedad, en ausencia de disposiciones expresas, se rige por las reglas del contrato de sociedad, de acuerdo con el artículo 1298 del mismo Código resulta, que los acreedores de la sociedad de gananciales son preferentes a los acreedores de cada socio sobre los bienes sociales, según se desprende de la concordancia de dicho artículo con el artículo 1590 del mismo Código.

Hasta el preciso día en que el procedimiento de divorcio se inicie judicialmente, la separación de bienes que produce el divorcio, no perjudicará a los derechos adquiridos con anterioridad por los acreedores, según el artículo 1331 del Código Civil de Puerto Rico. Por lo tanto, desde la fecha en que se celebre el matrimonio hasta la fecha en que se inicie judicialmente el procedimiento de divorcio, o sea, hasta la radicación de la demanda de divorcio, cualquiera deuda contraída por el marido, o por la mujer en los casos apropiados, afecta directamente todos los bienes de la sociedad de gananciales, independientemente de la separación de bienes, que entre los cónyuges divorciados, produce el divorcio.

De acuerdo con el artículo 101 del Código Civil de Puerto Rico, "desde el día en que el procedimiento de divorcio se inicie judicialmente, no será válida ninguna deuda contraída por el marido o por la mujer sin la autorización del tribunal, a cargo de los bienes gananciales". De manera pues, que cualquiera deuda contraída por el marido o la mujer, desde la fecha de la radicación de la demanda de divorcio hasta la

fecha en que sea firme la sentencia de divorcio, será de la exclusiva responsabilidad del cónyuge que la contraiga, a menos que tenga autorización expresa del tribunal donde se esté ventilando la acción de divorcio, y la sociedad de gananciales, como tal, no será responsable a ningún acreedor de las deudas contraídas por cualesquier de los cónyuges durante la tramitación del divorcio.

Después de ser firme la sentencia de divorcio, de acuerdo con el artículo 105 del Código Civil nuestro, se produce la separación de propiedad y bienes de todas clases entre los cónyuges. Esto significa que se produce una comunidad de bienes, que se supone sea administrada por ambos cónyuges, hasta el momento mismo que tal comunidad se resuelva, según se desprende, en parte, del artículo 1329 de nuestro Código Civil. Como ninguno de los cónyuges tiene facultad por sí solo, para enajenar los bienes gananciales, y por otro lado, como después de ser firme la sentencia, el tribunal no tendría autoridad para autorizar ninguna deuda contra la sociedad de gananciales, los acreedores sólo tendrían derecho a recabar de cada uno de los cónyuges, como una responsabilidad individual de ellos, por cualquiera de ellos, cualquiera obligación contraída durante el período que transcurre entre la fecha de ser firme la sentencia y la fecha en que se otorgue la escritura de liquidación de la sociedad de gananciales, no siendo por lo tanto, la sociedad responsable, del pago de ninguna obligación contraída durante este último período.

De manera pues, que tan pronto sea firme la sentencia de divorcio con su correspondiente separación de bienes, la sociedad de gananciales en liquidación, sólo sería responsable a los acreedores que hubieran contratado con ella válidamente, *antes de iniciarse el procedimiento de divorcio* o después de iniciado éste con el consentimiento del tribunal. Pagadas las deudas y las cargas y obligaciones de la sociedad, según se desprende de la concordancia que existe entre los artículos 1329, 95 y 1322 de nuestro Código Civil, el remanente líquido

de los bienes gananciales se dividirá por mitad entre mujer y marido o sus respectivos herederos, si alguno de los cónyuges falleciere después de ser firme la sentencia de divorcio.

Cuando se examina con detenimiento la institución de derecho civil completa, se da uno cuenta, que las variaciones que nuestro derecho contiene sobre el proceso de administración, disolución, liquidación y adjudicación desde que se inicia el proceso de divorcio hasta que cada cónyuge obtiene la porción líquida de sus bienes, están diseñadas más para la protección de los propios cónyuges, sobre todo para la mujer, que para la protección de los acreedores de la sociedad de gananciales. ¿Por qué esto es así?

Sin descender al lirismo empleado por algunos comentaristas en el sentido, que la sociedad matrimonial no puede equipararse en cuanto a efectos prácticos a las sociedades instituídas para el lucro, esto es así, porque los acreedores normalmente, no quedarían afectados, nada más que en el caso de que ambos cónyuges se pusieran de acuerdo para defraudar a tales acreedores, mediante traspasos simulados, renuncias de derechos y otros extremos dolosos o lesivos, y para tal caso, nuestro Código Civil contiene un sistema completo de defensa en favor de dichos acreedores, y no hace distinción entre las ocultaciones, simulaciones o enajenaciones hechas por otros deudores, en cualesquiera otras clases de obligaciones, y las ocultaciones, simulaciones o enajenaciones hechas por los cónyuges durante el matrimonio, o durante la comunidad de bienes que se produce desde que la sentencia firme de divorcio disuelve la sociedad hasta que la liquidación y adjudicación final, a su vez, disuelve la comunidad.

En primer lugar, es bueno tomar conocimiento que desde que se inicia la acción de divorcio, los acreedores tienen, si no un sistema de publicidad tan completo como el que tiene el derecho civil francés, por lo menos un sistema de publicidad suficiente a los efectos de la protección de sus créditos contra la sociedad. Como hemos visto, el artículo 97 de

nuestro Código Civil establece, que el divorcio sólo puede ser concedido mediante juicio en forma ordinaria, o sea, mediante un procedimiento público. Tan pronto se radica la demanda de divorcio, de acuerdo con el artículo 1330 de nuestro Código Civil, tal demanda puede anotarse en los registros de la propiedad donde estén inscritos los inmuebles pertenecientes a la sociedad de gananciales. La sentencia que se dicta forma parte de un registro público accesible a cualquiera persona interesada. Todavía el artículo 28 de la Ley número 24 de 22 de abril de 1931 exige una inscripción posterior de la sentencia en el Registro Demográfico de Puerto Rico. Si se trata de mujer casada, haciendo negocios con el consentimiento de su marido, el artículo 15 inciso 8 provee el método para que conste en el Registro Mercantil la cancelación de la licencia marital. Si por el contrario, se trata del divorcio de un cónyuge fuera de la jurisdicción [ausente], tanto la notificación de la demanda como la notificación de la sentencia, se hace por edictos. Comprendemos que todo esto podría ordenarse en una forma más científica, que hiciera obligatoria en cada caso de divorcio, una más metódica publicidad en beneficio de los acreedores de la sociedad de gananciales; pero, el procedimiento actual no deja de ser suficiente, para que cualquier acreedor cuidadoso de sus intereses, pueda en tiempo oportuno, tomar las medidas legales para proteger sus créditos.

Ahora bien, partiendo del supuesto que un acreedor no tuviera conocimiento alguno del procedimiento de divorcio, cualquier intento de defraudar a los acreedores, realizado por uno o por ambos de los cónyuges divorciados, ¿dejaría a tales acreedores sin remedio alguno contra sus defraudadores?

La pregunta hay que contestarla en la negativa. Las actuaciones fraudulentas tienen que estar comprendidas dentro de las siguientes modalidades: (1) renuncia a la participación del caudal ganancial, por uno o por ambos cónyuges, después de disuelta la sociedad; (2) abandono de los bienes

gananciales, por uno o por ambos cónyuges, después de disuelta la sociedad; (3) enajenación a título gratuito o a título oneroso, en favor de una tercera persona, por uno o por ambos cónyuges, después de disuelta la sociedad. Las tres situaciones se encuentran totalmente previstas por nuestro Código Civil.

El artículo 1297 de nuestro Código, (artículo 1394 del español) establece que cuando la renuncia a los derechos dentro de la sociedad de gananciales se realiza por causa de separación, o después de disuelto o anulado el matrimonio, se hará constar en escritura pública y los acreedores tendrán el derecho que se les reconoce en el artículo 955 de nuestro Código (artículo 1001 del español), o sea, podrán los acreedores pedir al tribunal competente, que los autorice a subrogarse en los derechos del renunciante.

El artículo 1064 de nuestro Código, (artículo 1111 del español), establece, que los acreedores pueden ejercitar todos los derechos y acciones de su deudor, "el deudor de mi deudor e deudor mío", en caso de inacción de los cónyuges, para cobrar sus créditos, o sea, ejercitar lo que se conoce como la acción subrogatoria o indirecta. En cuanto a la aplicabilidad del artículo 1111 a casos de separación de bienes, véase 9 Manresa 795 (quinta edición del Instituto Editorial Reus), (1950); en cuanto a la glosa sobre la acción subrogatoria o indirecta, véase 8 Manresa 271, igual edición.)

El mismo artículo 1064 de nuestro Código, (artículo 1111 del español), establece, que los acreedores pueden impugnar, mediante la correspondiente acción rescisoria, los actos que el deudor haya realizado en fraude de su derecho, relacionado con el artículo 1249 de nuestro Código, (artículo 1297 del español), que establece, que cualquiera enajenación a título gratuito se presume celebrada en fraude de acreedores. En este caso el acreedor puede hacer uso de la acción pauliana, de carácter rescisoria: 8 Manresa 275 et seq., igual edición. A la página 278 de dicha cita, encontramos el comentario

relacionado con la Sentencia del 14 de enero de 1935 del Tribunal Supremo de España:

"Para el eficaz resultado de este remedio procesal son exigibles los siguientes requisitos: (*a*) existencia de un crédito en favor de los demandantes; (*b*) que el acto perjudicial se realice por el deudor con hechos ejecutados en daño de los acreedores ... (*c*) que ocasione de modo directo la insolvencia del deudor, determinada, no sólo por la imposibilidad de pago completo, sino también por la disminución de posibilidades económicas efectivas, para dar satisfacción a la exigibilidad integral del crédito; (*d*) que dicha insolvencia cause al deudor un daño cierto, sea debida al acto fraudulento y perdure en el momento de la interpretación judicial y (*e*) que intervenga el fraude, *ora solamente por parte del deudor* cuando va presunto en los negocios a título gratuito, *ora en concurrencia con el de terceros*—"consilium fraudis" como la simple previsión del daño, es decir, la conciencia del perjuicio que el empobrecimiento real o fingido cause al acreedor."

Relacionado este artículo con el artículo 1250 de nuestro Código, (artículo 1298 del español), en el sentido que el que hubiese adquirido de mala fe las cosas enajenadas en fraude de acreedores, deberá indemnizar a tales acreedores, de los daños y perjuicios que la enajenación les hubiese ocasionado, siempre que por cualquiera causa le fuera imposible devolver las cosas enajenadas, queda cubierta la imposibilidad de la devolución de la cosa enajenada, si la misma se hallare legalmente en poder de terceras personas que no hubiesen procedido de mala fe.

Resumiendo, un anterior acreedor no asegurado, después de decretada la separación de bienes por sentencia firme de divorcio, en caso de que cualquier cónyuge divorciado, o ambos, intentara la enajenación fraudulenta de los bienes pertenecientes a la sociedad de gananciales, tendría los siguientes derechos: (1) subrogarse en los derechos y acciones del renunciante, si alguno de los cónyuges divorciados decidiera renunciar a su participación en los bienes gananciales, (2) perseguir los bienes en posesión de cualesquier de los

dos cónyuges divorciados; (3) subrogarse en los derechos y acciones de los cónyuges divorciados que éstos no quisieran ejercitar a nombre de ellos; (4) solicitar la rescisión de cualesquier traspasos fraudulentos a título gratuito realizados por los cónyuges divorciados; (5) solicitar la rescisión de cualesquier traspasos fraudulentos a título oneroso realizados por los cónyuges divorciados; (6) solicitar de la parte, a favor de quien se hubiese enajenado fraudulentamente los bienes gananciales, la correspondiente indemnización de los daños y perjuicios, si la cosa no puede ser restituída, por encontrarse en posesión de terceras personas inocentes. Sólo así adquieren su verdadero significado las últimas palabras de la primera glosa de Manresa—9 Manresa 721—"ya por estimar que en todo caso quedan a salvo los derechos de los acreedores contra la sociedad."

Si esto es así, ¿qué necesidad existe que el registro de la propiedad, donde sólo deben constar las operaciones sobre derechos reales, o los derechos de los acreedores asegurados, establezca por su cuenta, un gravamen en favor de los anteriores acreedores no asegurados, sin que ninguna gestión de los acreedores ante las autoridades judiciales, haga pertinente tal anotación mediante embargo u otra providencia anteriormente inscrita en el registro? ¿Cómo sabe el registrador correspondiente si existen anteriores acreedores no asegurados de la sociedad de gananciales, a menos que no sea por una gestión afirmativa de dichos acreedores, de la cual haya constancia en el propio registro?

Después de analizar en su totalidad la institución de derecho correspondiente, creemos que la misma está inspirada más en la protección de los derechos de los cónyuges que en la protección de los derechos de los acreedores; que en cuanto a anteriores acreedores no asegurados se refiere, sus derechos no pueden ser mayores, ni estar mejor garantizados durante la liquidación de la sociedad de gananciales, que durante la existencia de dicha sociedad y que nuestra disertación ante-

rior en el caso de *Pérez* v. *Registrador*, 62 D.P.R. 789, cita precisa a la página 795, no está fundamentada, ni por nuestro derecho civil, ni por nuestro derecho hipotecario; que sin mediar una gestión afirmativa de tales anteriores acreedores no asegurados, ante las autoridades judiciales correspondientes, el registro de la propiedad no tiene base para presumir la existencia de tales acreedores, a los efectos de coartar la acción conjunta de los dos cónyuges divorciados para realizar aquellas enajenaciones que sean pertinentes a los fines de una liquidación formal o de una disposición informal de los bienes de su pertenencia; que en la mayoría de los casos de divorcio, los bienes sujetos a liquidación no justifican los gastos adicionales de una liquidación formal, debiendo presumirse, en ausencia de actos afirmativos de los anteriores acreedores no asegurados, que consten del mismo registro, que los dos cónyuges divorciados son las únicas personas realmente interesadas en la liquidación y por lo tanto, pueden proceder de común acuerdo a la enajenación de sus derechos en la sociedad.

Claro debe ser asimismo, que cuando no haya acuerdo entre los cónyuges para el acto de enajenación correspondiente, la inscripción sujeta a la resulta de la liquidación debe prevalecer, pues en ese caso, se trata de la protección de las partes realmente interesadas, y en este sentido, confirmamos nuestra anterior doctrina a tal efecto. En este caso, los deudores de la sociedad disuelta siempre tendrían el recurso del ofrecimiento de pago y la consignación posterior, que establece el artículo 1130 de nuestro Código Civil.

*Debe revocarse la nota recurrida en cuanto se entienda, que la cancelación de hipoteca queda "sujeta a la resulta de la liquidación de la sociedad de gananciales habida entre Alberto Cesari Bacó y María Luisa Lorenzi Pietri", debiendo quedar dicha cancelación de hipoteca inscrita sin condición alguna.*

El Juez Presidente señor Snyder no intervino.