ANA CARMEN PIAZZA MARESCHI, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

Número 1312.
*Sometido:* 3 de mayo de 1954. *Resuelto:* 11 de mayo de 1955.

---

*Luis López de Victoria,* abogado de la recurrente; el Registrador recurrido compareció por escrito.

El Juez Asociado Señor Negrón Fernández emitió la opinión del Tribunal.

Alejandro Antonio Piazza Olaya, al igual que cada uno de otros cinco hermanos, adquirió a título de herencia intestada de su padre Alejandro Piazza Massini—fallecido el 20 de agosto de 1949—una participación indivisa de una sexta parte en una finca de 200 cuerdas sita en el barrio Aguas Blancas, de Yauco. La finca se inscribió en el Registro en común y proindiviso a nombre de los seis herederos. A la fecha del fallecimiento de su padre, Alejandro Antonio Piazza Olaya era casado en primeras y únicas nupcias con Cándida Cintrón Luca.

El 3 de octubre de 1949 Piazza Olaya otorgó testamento abierto, por el cual legó, en su totalidad y sin limitación, el tercio de libre disposición de todos sus bienes a su sobrina Ana Carmen Piazza Mareschi, de 19 años de edad, e instituyó como únicos y universales herederos a su única hija Eba Malta Piazza Cintrón y a su esposa Cándida Cintrón Luca, ésta en la cuota viudal usufructuaria establecida por ley. Nombró, por su albacea universal, a su hermano Américo Piazza Olaya, fijándole un plazo de un año para proceder a la formación de inventario y liquidar, dividir y adjudicar sus bienes, sin hacer designación específica de los mismos.

Alejandro Antonio Piazza Olaya falleció en Yauco el 5 de febrero de 1953.

El 8 de marzo de 1954, la legataria Ana Carmen Piazza Mareschi solicitó del Registrador recurrido que con vista de copia certificada del acta de defunción de su causante, de la escritura de testamento abierto por él otorgada, y de otros

documentos que también acompañó, inscribiera a su nombre, en una tercera parte, y en dos terceras partes a nombre de Eba Malta Piazza Cintrón, conocida por Eva Marta Piazza Cintrón, sin perjuicio de la cuota usufructuaria correspondiente a la viuda Cándida Cintrón Luca, el condominio indiviso de una sexta parte que, en la finca de 200 cuerdas antes mencionada, figuraba inscrito a nombre del testador a título de herencia.

El 16 de dicho mes y año verificó el Registrador la inscripción del testamento en cuanto al referido condominio pero "sujeto a las resultas de la liquidación de la sociedad de gananciales existente entre el causante y la viuda Cándida Cintrón Luca.   No aparece gravada."

Ana Carmen Piazza Mareschi, no conforme con aquella parte de la nota registral que sujeta la inscripción "a las resultas de la liquidación de la sociedad de gananciales", ha recurrido gubernativamente a este Tribunal, solicitando su revocación por considerar dicha condición improcedente en derecho por cuanto la finca objeto de la inscripción pertenecía privativamente a su causante y no a la sociedad de gananciales disuelta a su muerte, ya que fué adquirida a título lucrativo y no a título oneroso durante el matrimonio.

El Registrador, por su parte, considera que la condición por él consignada en su nota "habría de salvaguardar ciertos derechos de naturaleza ganancial que con frecuencia se hallan en los bienes privativos de los cónyuges" mencionando "las expensas útiles y edificios hechos en bienes privativos de uno de los cónyuges", que se reputan gananciales en virtud del art. 1304 del Código Civil, ed. 1930.   En vista de ello sostiene que "la condición aquí consignada serviría pues de aviso al tercero para advertirle que si contrata en relación con dicho condominio privativo, lo hace a sabiendas de que la sociedad de gananciales no ha sido liquidada y que cabe la posibilidad de que en el bien privativo existan mejoras, edificaciones o expensas de naturaleza ganancial sujetas a la liquidación."

■■ Como puede verse de lo expuesto, el derecho here-

ditario, esto es, la trasmisión de los derechos y obligaciones del causante a sus herederos—que ocurre por el hecho solo, y desde el momento mismo, de su muerte—fué inscrito. En *García* v. *El Registrador de Guayama*, 27 D.P.R. 624, resolvimos, respecto a bienes reputados *como gananciales* aun cuando inscritos solamente a nombre del marido—por haber sido adquiridos durante el matrimonio sin que constara que no fuera a título oneroso—que por tratarse simplemente de una inscripción del derecho hereditario y aparecer, de una resolución sobre declaratoria de herederos, quiénes constituían la sucesión, procedía la inscripción ya que "el registrador teniendo en cuenta las constancias del registro pudo limitarse a inscribir lo que, según el registro, correspondía al causante de los peticionarios, esto es, la mitad de las fincas, sujeta la inscripción a las resultancias de la liquidación de la sociedad de gananciales", en vista de que, tratándose de una mera trasmisión de derechos hereditarios, "todo lo que correspondía al difunto corresponde ahora a sus herederos y para verificar la inscripción en que así conste no se requiere en verdad como elemento indispensable la liquidación de la sociedad de gananciales."

En *Alameda* v. *Registrador*, 76 D.P.R. 230, en el cual el propio Registrador aquí recurrido inscribió la cancelación de una hipoteca—otorgamiento hecho *de bienes de la sociedad de gananciales*, luego de decretado el divorcio entre los cónyuges, sin que precediera la liquidación de dicha sociedad—pero sujeta dicha cancelación también "a la resulta de la liquidación de la sociedad de gananciales . . .", estudiamos detenidamente, al revocar la nota en esta última condición, el estado de derecho surgente de nuestro Código Civil respecto a disolución, liquidación y adjudicación de bienes de la sociedad conyugal, y dijimos que tales disposiciones estaban diseñadas más para la protección de los propios cónyuges que para de los acreedores de dicha sociedad.

Aquí no se trata, como en el caso de *Alameda*, supra, de un acto de *enajenación* de bienes gananciales—cancelación de

una hipoteca—llevado a cabo por los excónyuges puestos de acuerdo, sin que se hubiera formalizado la liquidación de los bienes de la sociedad que entre ellos existió. Se trata de una trasmisión de derechos y obligaciones del causante a sus herederos en bienes propios. En el caso de *Alameda*, el bien ganancial representado por el crédito hipotecario fué, en puro derecho, transformado en otro bien ganancial, representado éste por el pago en virtud del cual se hizo la cancelación. Tampoco se trata aquí de la inscripción del derecho hereditario de los causahabientes *en bienes* pertenecientes a *la sociedad de gananciales* disuelta por la muerte de su causante, como lo fué en el caso de *García*, supra, en el cual, como hemos visto, se sometió la inscripción de los derechos hereditarios trasmitidos a la muerte del testador, a las resultancias de la liquidación de la sociedad de gananciales disuelta por su muerte.

■■ Es de advertir que tanto como se requiere la liquidación previa de la sociedad de gananciales para determinar si existe remanente líquido ganancial sujeto a división entre los herederos del cónyuge premuerto y el supérstite, así también la ley dispone la partición entre herederos, entre los cuales se encuentra—con carácter de heredero forzoso—el cónyuge supérstite en la cuota legal usufructuaria. Es en virtud de las disposiciones del art. 1319 del Código Civil, ed. 1930, que provee: "Pagadas las deudas y las cargas y obligaciones de la sociedad, se liquidará y pagará el capital del marido y de la mujer hasta donde alcance el caudal inventariado," en relación con el 1317 ([1]) y 1924, ([2]) que debemos

---

([1]) Artículo 1317 (ed. 1930):

"El inventario comprenderá numéricamente, para colacionarlas, las cantidades que, habiendo sido pagadas por la sociedad de gananciales, deban rebajarse del capital del marido o de la mujer.

"También se traerá a colación el importe de las donaciones o enajenaciones que deban considerarse ilegales o fraudulentas, con sujeción al artículo 1313."

([2]) Artículo 1324 (ed. 1930):

"En cuanto a la formación del inventario, reglas sobre tasación y venta de bienes y demás que no se halle expresamente determinado por el presente capítulo, se observará lo prescrito en la sección quinta, capítulo VI, título III, del libro tercero."

determinar si llevándose al inventario, al procederse a la liquidación de la sociedad de gananciales, los bienes propios de cada cónyuge, y pudiendo quedar éstos afectados por el resultado de la liquidación, debe—como lo ha hecho el Registrador—consignarse en la inscripción la condición por él impuesta de que el derecho hereditario está sujeto a las resultas de dicha liquidación.

La Dirección General de los Registros tiene declarado que tratándose de bienes adquiridos por alguno de los cónyuges durante el matrimonio a título gratuito—como aquí, por herencia—la disolución de la sociedad conyugal no modifica la capacidad del adquirente para disponer libremente de ellos, ni implica la necesidad de que se le adjudiquen, previa liquidación de la sociedad. Resoluciones de 30 de mayo de 1933, VII Jurisprudencia Registral 392; de 24 de abril de 1885, II Jurisprudencia Registral 210; de 15 de junio de 1892, II Jurisprudencia Registral 780; de 4 de enero de 1893, II Jurisprudencia Registral 844.

De otro lado, tiene igualmente declarado que las expensas útiles hechas en los bienes peculiares de cualquiera de los cónyuges mediante anticipos de la sociedad, o por endosos del marido o de la mujer, tienen el carácter de gananciales, conforme a lo dispuesto en el art. 1404 del Código Civil Español [1304 de nuestro Código Civil, ed. 1930] y que por esta cualidad sería necesaria la liquidación de la sociedad conyugal siempre que se pruebe que existen dichas mejoras y que éstas se hicieron durante el matrimonio con productos que no pertenecían privativamente a uno de los cónyuges. Resoluciones de 5 de mayo de 1908, IV Jurisprudencia Registral 329; y de 30 de mayo de 1933, VII Jurisprudencia Registral 392. Sin embargo, en esas propias resoluciones se ha indicado que para no privar a los cónyuges viudos de sus facultades dominicales respecto a sus bienes privativos, aún disuelta la sociedad, es necesario que realmente existan expensas útiles hechas durante el matrimonio en tales bienes, y que *tales*

*expensas aparezcan completamente justificadas y no basadas en simples conjeturas.*

Igualmente ha declarado, en relación con el párrafo 2 del citado art. 1404 del Código Civil Español que el principio consignado en dicho párrafo otorgando el carácter de gananciales a los edificios construídos durante el matrimonio en suelo propio de uno de los cónyuges, con la obligación de abonar el valor del suelo a aquél a quien pertenezca, constituye una excepción al principio de accesión consignado en el 358 del Código Civil Español [294 de nuestro Código Civil, ed. 1930], y que como consecuencia de dicha excepción *cuantas veces sea justificada en forma la existencia* de edificios construídos durante el matrimonio y que, para los efectos del registro deban reputarse gananciales, el cónyuge viudo dueño anterior del suelo, carece de la libre disposición de los mismos mientras no *se practique la liquidación del caudal conyugal* y se haga a favor de aquél la adjudicación correspondiente. Resoluciones de 19 de octubre de 1900, III Jurisprudencia Registral 697; y de 21 de octubre de 1909, IV Jurisprudencia Registral 523.

El Tribunal Supremo de España, en sentencia de 27 de mayo de 1905, ha dicho, refiriéndose al carácter ganancial de los edificios construídos en suelo propio de uno de los cónyuges, que disuelta la sociedad de gananciales *el edificio resultará o no ganancial,* según el resultado que arroje la liquidación de dicha sociedad, pues es en esa época que cabe hablar de ganancias, si queda algún sobrante que repartir, luego de pagados los socios y los acreedores.

La construcción de un edificio durante el matrimonio, en suelo propio de uno de los cónyuges, varía la situación jurídica de la finca. Pero ese hecho debe quedar plenamente justificado, bien por circunstancias exteriores al registro—siendo bastante justificación la implícita en las manifestaciones auténticas de los cónyuges—o derivada de las constancias del propio registro. Resolución de la Dirección General de los Registros de 15 de julio de 1918, V Jurisprudencia Registral 218.

La anterior doctrina, que se ha sentado con relación a las facultades del cónyuge viudo para disponer de sus bienes propios, luego de disuelta, pero antes de liquidarse, la sociedad conyugal, rige igualmente con relación a las facultades dispositivas de los causahabientes del premuerto, *siendo necesario* el proceder previamente a la liquidación de la sociedad tan sólo si han quedado justificadas, a los fines del registro, las expensas útiles hechas en los bienes privativos de uno de los cónyuges con dinero, o producto, de la sociedad de gananciales, o la construcción de un edificio en suelo propio de uno de ellos.

En el presente recurso, nada hay en autos que indique que del Registro surgía, o que por hechos exteriores al Registro se estableciera, constancia alguna de que en la finca objeto de la inscripción, se hubieren hecho expensas útiles o construído edificios que deban reputarse gananciales. En tales condiciones, la situación jurídica del inmueble, como bien privativo, no ha cambiado, y en consecuencia, aquella parte de la nota recurrida sometiendo la finca en cuestión "a las resultas de la liquidación de la sociedad de gananciales", no está justificada, 9 Manresa, Código Civil Español, 590 y 591, 5ta. ed., y equivale a una restricción indebida a la facultad dispositiva de los que, ostentando los mismos derechos de su causante, podrían enajenar sin esperar el resultado de dicha liquidación.

*Procede la revocación de la nota recurrida en tanto la inscripción se hace "sujeta a las resultas de la liquidación de la sociedad de gananciales".*