544

José Suárez Martínez, peticionario, *v.* Tribunal Superior de Puerto Rico, Sala de Bayamón, Hon. Jorge Meléndez Vela, Juez, demandado; Andrea Miranda, interventora.

*Número:* 2873   *Resuelto:* 28 de mayo de 1962.

*F. Gallardo Díaz*, abogado del peticionario; *Mario A. Rodríguez,* abogado de la demandante, interventora en el caso.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 3 de enero de 1961 Andrea Miranda inició acción de divorcio contra José Suárez Martínez por la causal de adulterio. En la demanda presentada relacionó los bienes pertenecientes a la sociedad de gananciales, entre los cuales incluyó la suma de $4,573.92 depositada en cuenta de ahorros en el Banco Popular de Puerto Rico. En la misma fecha solicitó mediante moción que se ordenara a la referida institución bancaria se abstuviera de autorizar y efectuar retiros contra dicha cuenta de ahorros, y para ello alegó que la cantidad depositada originalmente ascendía a $7,173.92 y se había reducido a la suma indicada por distintas operaciones realizadas por el demandado, quien estaba haciendo transacciones y pagos sin su intervención; que el demandado había expresado su propósito de agotar completamente los fondos para privar así a la demandante de cualquier participación que le correspondiera en ellos; y que la actora tenía el temor de que su esposo dilapidara el dinero ahorrado causándole con ello los naturales contratiempos y desventajas. Dos días después el tribunal de instancia proveyó por orden accediendo a lo solicitado, pero disponiendo expresamente "Notifíquese de la presente orden al demandado significándole que si tiene algún reparo u objeción a la orden aquí dictada se señala la fecha de enero 12 de 1961, a las 2:00 p.m. para que comparezca a ser oído." Tanto la demanda como la orden le fueron notificadas al demandado el día 9 de enero. Debido a la ausencia de sus abogados, solicitó personalmente la suspensión de la vista señalada.

En 18 de julio, luego de haber tenido lugar varios incidentes que no es necesario reseñar, el demandado impugnó la orden de 5 de enero cuyo efecto era congelar los ahorros por entender que la misma "es errónea y contraria a la ley." Se declaró sin lugar esta pretensión, y para revisar la resolución dictada expedimos auto de certiorari.[1]

[1] En la petición de certiorari presentada se solicitó además que se revisara una resolución dictada en 14 de abril de 1961 mediante la cual se ordenó al Banco Popular la expedición contra la cuenta de ahorros de

El peticionario sostiene que la orden impugnada no está comprendida dentro de ninguna de las medidas provisionales a que puede dar lugar el juicio de divorcio—artículos 98 a 101 del Código Civil, 31 L.P.R.A. secs. 341 a 344; y que es. nula porque se dictó sin notificación y sin la celebración de una vista según requerido por la Regla 56.2 de las de Procedimiento Civil, y sin la prestación de fianza según exigido por la Regla 56.3. ■

El Capítulo II del Título IV del Libro Primero del Código Civil trata sobre las medidas provisionales a que puede dar lugar el juicio por divorcio, y se refiere específicamente a la custodia y cuidado provisional de los hijos menores, art. 98, 31 L.P.R.A. sec. 341; la fijación de un domicilio para la esposa cuando es la parte actora, art. 99, 31 L.P.R.A. sec. 342; y la concesión de una pensión alimenticia, incluyendo litis expensas, art. 100, 31 L.P.R.A. sec. 343. Se provee además que desde el día en que se inicie la acción judicial no será válida ninguna deuda contraída por cualesquiera de los cónyuges a cargo de los bienes gananciales sin autorización del tribunal, Art. 101, 31 L.P.R.A. sec. 344. Estas disposiciones fueron adoptadas de los artículos 146, 147,(2) 148 y 150 del Código Civil de Luisiana, *West's Louisiana Civil Code*, vol. 1, págs. 716–744. Es curioso observar que el legislador puertorriqueño omitió incorporar una disposición similar a la.

un cheque por $150 para satisfacer la suma concedida por concepto de honorarios de abogado de la demandante, según pronunciamiento contenido en la sentencia en rebeldía por la cual se declaró con lugar la demanda. Sin embargo, un examen de los autos revela que aunque la orden fue cumplimentada, posteriormente—al dejarse sin efecto la sentencia dictada—el abogado de la demandante consignó en secretaría el importe que se le había satisfecho.

En 29 de julio la demandante solicitó la fijación de una pensión alimenticia y una suma razonable para litis expensas, y después de celebrada la vista correspondiente, el tribunal concedió por este último concepto la suma de $150, "los cuales aparecen satisfechos en virtud de orden de esta Sala de 16 de mayo de 1961."

Por todo lo expuesto, la revisión de la resolución de 14 de abril se ha tornado académica.

(2) La medida relacionada con la fijación de domicilio fue derogada en Luisiana en el año 1928.

contenida en el artículo 149 del Código Civil de Luisiana que autoriza a la esposa que litiga por el divorcio, "para la protección de sus intereses," a exigir la formación de un inventario y avalúo de los bienes muebles e inmuebles que se encuentran en posesión del marido y a solicitar un *injunction* para impedir que éste disponga de ellos en ninguna forma. ([3])

Entre las medidas cautelares durante el juicio de divorcio, el artículo 74 de la Ley de Matrimonio Civil de la República Argentina establece que ". . . si la conducta del marido hiciese temer enajenaciones fraudulentas o disipación de los bienes del matrimonio, la mujer podría pedir al Juez de la causa que se haga inventario de ellos, y se pongan a cargo de otro administrador, o que el marido dé fianza del importe de los bienes." Véase, Goldstein y Norduchowicz, *El Divorcio en el Derecho Argentino*, Ed. Logos, Buenos Aires (1955), págs. 354–356, quienes afirman que la enumeración contenida en el artículo—inventario, administrador y fianza—no es taxativa y que el juez podría ordenar otras me-

---

([3]) Iguales alcances se lograban, en cuanto a los bienes de la mujer, bajo la regla 5ta. del artículo 68 del Código Civil Español según rigió hasta el 24 de abril de 1958, que en lo pertinente disponía que interpuesta y admitida la demanda de divorcio el tribunal tenía facultad para "dictar las medidas necesarias para evitar que el marido que hubiese dado causa al divorcio... perjudique a la mujer en la administración de sus bienes." Manresa, en sus *Comentarios al Código Civil Español* (ed. 1943), tomo 1, pág. 431, indica que la razón de ser de este precepto es clara y comprensible: "Aunque los instintos de la naturaleza inducen al hombre a pensar de continuo en el porvenir de sus hijos y le mueven, con el fin de asegurarlo, a esforzarse no sólo para conservar, sino para aumentar el caudal de la familia, la práctica ha hecho ver que hoy, por desgracia, maridos que, sintiéndose bajo el peso de una acción de nulidad o de divorcio, se dejan dominar por el deseo de venganza o el sentimiento de despecho, desatienden la voz de su conciencia y de su cariño, y procuran dilapidar la fortuna cuya guarda les ha sido encomendada."

A partir de la fecha indicada se incorporaron al artículo 68 reglas específicas para el régimen de los bienes del matrimonio en litigio, y entre otras, se autoriza al juez, atendidas las circunstancias del caso, para que excepcionalmente confiera a la mujer la administración de los bienes gananciales o de alguno de ellos, y provee expresamente que "será necesaria licencia judicial para los actos que excedan *de la mera administración* de los gananciales, cualquiera que sea el cónyuge que los administre." Medina y Marañón, *Leyes Civiles de España*, tomo 1, pág. 50.

didas. En Bolivia la ley dispone que inmediatamente después de la presentación de la demanda se hará un inventario de los bienes matrimoniales y se repartirán los gananciales *muebles* por partes iguales entre los cónyuges. Gallardo, *Divorcio, Separación de Cuerpos y Nulidad de Matrimonio en las Naciones Latino-Americanas*, Ed. Diana, Madrid (1957), pág. 86. En Uruguay se reconoce al juez la facultad de ordenar, a petición de las partes o de oficio, todas las medidas que tiendan a proteger los bienes gananciales de los riesgos que podrían provenir de la mala administración del marido. Gallardo, *op. cit.*, pág. 569. ■

Conforme resolvimos en *Alameda* v. *Registrador*, 76 D.P.R. 230, 239 (1954) interpretando las disposiciones del artículo 101 del Código Civil "cualquier deuda contraída por el marido o la mujer, desde la fecha de la radicación de la demanda de divorcio hasta la fecha en que sea firme la sentencia de divorcio, será de la exclusiva responsabilidad del cónyuge que la contraiga, a menos que tenga autorización expresa del tribunal donde se está ventilando la acción de divorcio, y la sociedad de gananciales, como tal, no será responsable a ningún acreedor de las deudas contraídas por cualesquier de los cónyuges durante la tramitación del divorcio." Esto es en cuanto al efecto de la iniciación de la acción de divorcio respecto de los acreedores. Pero respecto a los cónyuges entre sí, nada impide que cualesquiera de ellos intente proteger sus intereses en los bienes gananciales para evitar que el otro los disipe o disponga a su arbitrio de algún elemento del activo, independientemente de que en la liquidación posterior pueda tomarse este acto en consideración y cargársele su importe o valor. ■

Ahora bien, a los fines de resolver el presente recurso, puede admitirse que la orden impugnada sobre congelación de fondos no se justifica como una de las medidas provisionales a que hace referencia el Código Civil para el caso de la iniciación de la acción de divorcio. No obstante, la existencia de estas disposiciones no inhibe la virtualidad de la Regla

56 de las de Procedimiento Civil que trata sobre los remedios provisionales. Es significativo que la Regla 56.1, al exponer los principios generales sobre el particular, se refiere a que *"(e)n todo pleito* . . . el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia," y que la norma que se establece para determinar su procedencia es que la medida sea "apropiada," considerando los intereses de todas las partes. En este sentido la regla citada concede a las partes un remedio provisional no importa cuál sea la naturaleza de la reclamación, ya que expresamente abandonó el lenguaje de la anterior Ley para Asegurar la Efectividad de las Sentencias (Ley de 1 de marzo de 1902, 32 L.P.R.A. secs. 1069 *et seq.*) que se refería a "toda persona que demandase en juicio el cumplimiento de una obligación." Si en alguna acción se justifica la adopción de medidas provisionales es en la de divorcio, una de cuyas consecuencias es la disolución de la sociedad de gananciales, para evitar que cualesquiera de los cónyuges sea defraudado por actos de ocultación o disposición de los bienes. La experiencia nos enseña que son frecuentes los casos en que una mujer es despojada de su justa participación en la sociedad de gananciales por actos realizados por el marido bajo el palio del precepto que le confiere la administración de los bienes conyugales. Es cierto que esta situación no es alarmante en cuanto a bienes inmuebles se refiere, ya que para su enajenación se requiere el concurso de ambos cónyuges, pero el riesgo en cuanto a los bienes muebles es pronunciado, especialmente si se considera que en la economía moderna gran parte de los activos están representados por valores mobiliarios como acciones, bonos y documentos de crédito. ▮

Por otro lado, a pesar de las disposiciones civiles taxativas sobre las medidas provisionales que puedan adoptarse, hemos sancionado el nombramiento de un síndico para tomar posesión de los bienes que corresponden a la sociedad de ga-

nanciales en cualquier estado del pleito de divorcio y durante la sustanciación del mismo. *López* v. *Corte de Distrito de Guayama*, 31 D.P.R. 137 (1922). No vemos como una orden de efectos más limitados, pues no alcanza a todos los bienes de la sociedad conyugal, pero enderezada al mismo propósito de conservar los bienes, pueda sostenerse que es contraria a la ley. ■

No hemos pasado por alto que la Regla 56.1 se refiere a la adopción de medidas que sean necesarias "para asegurar la efectividad de la sentencia." Esta expresión no puede tomarse en su sentido estrictamente literal, y en el caso específico del pleito de divorcio no puede ignorarse que una de las consecuencias de la sentencia que pueda dictarse a favor de la parte demandante, es la disolución y consiguiente liquidación de la sociedad de gananciales. Se asemeja a la situación de una acción filiatoria en relación con la cual hemos resuelto que procede la anotación de un aviso de demanda al margen de la descripción de los bienes del caudal paterno— que no deja de ser una forma de aseguramiento—porque de declararse la filiación el hijo tendrá el derecho de heredar a su presunto padre. *Olivera* v. *Registrador*, 51 D.P.R. 413 (1947). En este sentido una orden como la obtenida por la demandante en el presente caso tiene como consecuencia la protección de su derecho a participar en todo el patrimonio ganancial según éste existía al momento de iniciarse la acción. ■

La orden dictada en el presente caso participa de la naturaleza de una prohibición de enajenar que puede expedirse *ex parte*, sin la celebración de vista. Regla 56.4. Pero aun cuando tal requisito fuere necesario, puede sostenerse que en este caso se cumplió sustancialmente ya que en la orden dictada se le ofreció al demandado la oportunidad para que compareciera dentro de un término razonable a presentar los reparos que tuviera. Ciertamente ningún perjuicio se le causaba al demandado con la congelación de los fondos, pues

la medida simplemente conducía a su conservación.(⁴)   En cuanto a la prestación de fianza, la Regla 69.6 provee que no se exigirá a ningún cónyuge en un pleito de divorcio, de relaciones de familia, o sobre bienes gananciales, a menos que el tribunal dispusiere lo contrario en casos meritorios.

*Por los motivos expuestos, se anulará el auto expedido y se confirma la resolución dictada por el Tribunal Superior, Sala de Bayamón, en 5 de enero de 1961.*

---

(⁴) La ausencia de perjuicio alguno al demandado queda corroborada por el tiempo que transcurrió entre la fecha de la notificación de la orden de congelación y la de la radicación de la moción impugnándola.  Sospechamos que si no hubiese sido citado y condenado por desacato por su incumplimiento del pago de pensiones alimenticias este incidente no se hubiera promovido.