CARLOS CARLE DUBOIS, demandante y apelante, *v.* JOSÉ J. BENÍTEZ, demandado y apelado.

No. 6220.—*Sometido:* Diciembre 20, 1933. *Resuelto:* Febrero 9, 1934.

*Largé & Acevedo,* abogados del apelante; *González Fagundo & González Jr.,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Carlos Carle Dubois formuló demanda en cobro de dinero contra José J. Benítez y embargó como de la propiedad del demandado, para asegurar la efectividad de la sentencia, una finca que se describe en la demanda, anotándose el embargo en el registro de la propiedad.

Fallado el pleito en favor del demandante y condenado el demandado a pagar la cantidad de $6,689.84, una vez firme la sentencia dictada, se expidió orden de ejecución y se ordenó la venta en pública subasta de la finca embargada.

José J. Benítez e Hijos, asumiendo ser una comunidad de bienes compuesta de José J. Benítez Díaz, Teodosia Tadea Benítez y Sampayo, Carlota Benítez y Sampayo, Josefa Benítez y Sampayo, Arcadia Benítez y Sampayo y José de Jesús Benítez Sampayo, entabló demanda de tercería contra Carlos Carle Dubois y José J. Benítez. Se alegó en dicha demanda que la finca embargada es de la exclusiva propie-

dad de la titulada comunidad de bienes de José J. Benítez e Hijos. Con dicha demanda se radicó una petición de *injunction* contra los demandados y el Márshal de la Corte de Distrito de San Juan para que se les prohibiera vender en pública subasta el inmueble embargado.

Con fecha 13 de mayo de 1932, la Corte de Distrito de San Juan, reconociendo que los acreedores de José J. Benítez sólo tendrían derecho a la parte que pudiere corresponderle en la comunidad y en manera alguna a la totalidad de la finca, prohibió que se llevara a cabo la venta en pública subasta del inmueble embargado hasta tanto fuese resuelto definitivamente el pleito de tercería.

Carlos Carle Dubois, demandante y acreedor de José J. Benítez, en virtud de la sentencia dictada contra este último, solicitó entonces de la corte la expedición de una orden para dar cumplimiento a la sentencia dictada, vendiendo en pública subasta todo derecho, acción, interés o participación que por cualquier título pudiese corresponder al demandado José J. Benítez en la finca en cuestión. La corte resolvió de conformidad, ordenando se librara por el secretario el correspondiente mandamiento al márshal para dar cumplimiento a lo solicitado por el demandante y acreedor de José J. Benítez. Ambas órdenes fueron dictadas por el Hon. Juez de la Corte de Distrito de San Juan A. R. de Jesús.

El demandado, José J. Benítez, solicitó que se declarara nula y sin ningún valor ni efecto la orden de ejecución dictada por el Juez de Jesús en 29 de junio de 1932. La corte inferior, por conducto del Hon. Pablo Berga, declaró con lugar la moción del demandado José J. Benítez y dejó sin efecto la orden de ejecución mencionada y los procedimientos subsiguientes para la venta en pública subasta de todo derecho, acción, interés o participación de José J. Benítez en la finca embargada. De esta resolución apeló el demandante, atribuyendo a la corte inferior cuatro errores que pasamos a considerar.

El primer error carece de importancia. Se alega que

la corte inferior declaró con lugar la moción del demandado José J. Benítez y suspendió la subasta señalada para el día 22 de julio de 1932, a virtud de una moción que no fué notificada al demandante oportunamente y sin señalar día para la vista de la misma, habiéndose resuelto ésta sin ser oído dicho demandante y a sus espaldas. Este señalamiento de error no aparece completamente claro. De su lectura se deduce que el demandante se querella de que se haya suspendido la subasta sin haber sido oído. El error que se atribuye a la corte, sin embargo, consiste en haberse negado a eliminar ciertas mociones por no haberse notificado al demandante el señalamiento con cinco días de anticipación. De los autos surge claramente que el demandante fué debidamente notificado de la moción radicada en 14 de julio de 1932 por el demandado. José J. Benítez solicitando que se declarara nula la orden de ejecución de 29 de junio de 1932. Debe desestimarse este supuesto error.

Los tres errores restantes pueden condensarse en uno solo. Se alega que la corte inferior erró al concluir que la resolución de 13 de mayo de 1932, dictada por el Juez de Jesús, es contradictoria a la orden de 29 de junio de 1932 dictada por el mismo juez, y que impide la ejecución y subsistencia de ésta. También se alega que la corte erró al declarar que la referida resolución de 13 de mayo de 1932, decretada en el procedimiento de tercería, debe prevalecer sobre la última orden de ejecución dictada por el Juez de Jesús a solicitud del demandante Carlos Carle Dubois en el pleito incoado contra José J. Benítez. Se afirma por último que la corte inferior incurrió en error al declarar que mientras no se revoque o modifique el auto de *injunction,* nada puede actuarse que tienda a ejecutar la sentencia en la totalidad de la finca o en parte de ella.

La corte *a quo,* en su resolución de fecha 9 de agosto de 1932, declara que la de 13 de mayo del mismo año es contradictoria a la orden de 29 de junio e impide la ejecución y subsistencia de ésta, mientras no se modifique o revoque la

prohibición de aquélla. En nuestro sentir, la última resolución es completamente compatible con la de 13 de mayo de 1932, en la cual el Juez de Jesús hace las siguientes declaraciones:

"De acuerdo con la prueba presentada por los demandantes en tercería la comunidad de José J. Benítez e Hijos, tiene un título de propiedad sobre la finca en cuestión y aunque el demandado en el caso principal, José J. Benítez, es miembro de dicha comunidad, sus acreedores sólo tendrían derecho a la parte que pudiere corresponderle en la comunidad y en manera alguna tendrían derecho a la totalidad de la finca. En este caso se trata de vender en pública subasta la totalidad de la finca. Entendemos que la comunidad de bienes de José J. Benítez e Hijos, tiene derecho a impedir que se venda en pública subasta la totalidad de la finca en cuestión para satisfacer una deuda de uno de los comuneros. . ."

En 29 de junio de 1932, el mismo Juez de Jesús, a solicitud de la parte demandante, y ajustándose a la resolución dictada en 13 de mayo de 1932, ordenó que se librase por el secretario el correspondiente mandamiento al márshal para dar cumplimiento a la sentencia dictada, vendiéndose por dicho funcionario, en pública subasta, todo derecho, acción, interés o participación que por cualquier título pueda corresponder al demandado José J. Benítez en la finca que reclaman como suya los miembros de la alegada comunidad.

Como se ve, en la primera resolución, el Juez de Jesús resuelve que la finca, que pertenece a los comuneros, no puede venderse en su totalidad para hacer efectivo un crédito contra el demandado José J. Benítez; pero deja a salvo el derecho del acreedor por la sentencia para hacer efectivo su crédito en la parte que pueda corresponder al mencionado José J. Benítez en la comunidad. El *injunction* decretado por el Juez de Jesús impide la venta de la totalidad de la finca para hacer efectiva una obligación contraída por uno de los comuneros, pero en modo alguno prohibe que el acreedor por la sentencia ejecute la participación o interés correspondiente al comunero contra quien se dictó la sentencia.

Arguye el demandado, sin embargo, que estando la

finca en comunidad ningún acreedor puede embargar el interés de un socio en bienes determinados, "y sí sólo el interés que en toda la comunidad pueda tener el socio, toda vez que un comunero es un socio."

No compartimos el criterio de la parte apelada. La comunidad y la sociedad se rigen por principios totalmente diferentes. Apunta Manresa (11 Comentarios al Código Civil 257) que "Si toda sociedad implica una comunidad, no puede decirse del mismo modo que toda comunidad constituya una sociedad." Ambas cosas se distinguen, según el mismo comentarista, por razón de su respectiva naturaleza jurídica, por su distinto fundamento y por el fin u objeto de las mismas. La sociedad tiene como característica la idea del lucro, la esperanza de la ganancia repartible entre los socios, elemento éste que no se observa en la comunidad. En ésta, cada comunero puede enajenar o gravar su parte, o fracción de ella, sin consentimiento de los demás, entrando, por tanto, otros miembros en la comunidad; la sociedad se compone solamente de las personas determinadas en el contrato; así es que ningún socio puede enajenar su parte, ni asociar a otra persona, a no ser con consentimiento de los demás. Artículo 1587, Código Civil, Edición 1930, y 120, Código de Comercio, Edición 1932.

En la demanda de tercería se alega que al fallecimiento de doña Carlota Sampayo, primera esposa que fué de don José J. Benítez Díaz, se practicó un inventario y liquidación de los bienes existentes entonces, constituyéndose una comunidad de todos los bienes relictos al fallecimiento de dicha señora, siendo uno de esos bienes la finca que fué embargada como de la propiedad exclusiva de José J. Benítez. Claramente se ve que los bienes de la comunidad no se limitan exclusivamente al inmueble mencionado, sino que se extienden a todos los bienes relictos al fallecimiento de la señora Sampayo.

El demandante, para hacer efectivo su crédito, escoge una finca que forma parte de los bienes de la comunidad y trata

de vender en pública subasta la participación o interés que el demandado pueda tener en dicha finca.

Convenimos en que el derecho de cada comunero cubre la totalidad de los bienes objeto de la comunidad en proporción al valor que tenga cada uno en la cosa común, y que no recae sobre parte o porción física determinada de dichos bienes. Es innegable, sin embargo, que la participación abstracta de cada uno de los copropietarios abarca el todo y la parte, y se extiende de un extremo a otro de la cosa común, hasta el punto de que no podría desprenderse de la misma sin afectar los derechos de los demás partícipes. El comunero puede disponer de su parte enajenándola o gravándola libremente, con la autoridad y consecuencias inherentes a la propiedad individual.

Dispone el artículo 333 de nuestro Código Civil que todo condueño tendrá la plena propiedad de su parte y la de los frutos y utilidades que le correspondan, pudiendo en su consecuencia enajenarla, cederla o hipotecarla, y aun sustituir a otro en su aprovechamiento y darla en arrendamiento salvo si se tratare de derechos personales, pero el efecto de la enajenación o de la hipoteca con relación a los condueños, estará limitado a la porción que se les adjudique en la división al cesar la comunidad, y el efecto del arrendamiento será conferir al arrendatario, durante el término del contrato, las facultades del condueño en orden a la administración y mejor disfrute de la cosa común.

Glosando el artículo 399 del Código Civil Español, equivalente al 333 de nuestro Código Civil, Edición de 1930, dice el tratadista señor Manresa en el tomo tercero, páginas 463 y 464 de sus "Comentarios al Código Civil":

"Por eso el artículo objeto de este comentario determina con toda claridad que el condueño tiene la plena propiedad *sobre su parte,* esto es, sobre lo que representa la cuota de su participación en el todo de la comunidad, y asimismo sobre los frutos y utilidades que, conforme al mandato del artículo 393 y en la manera especificada por el apartado segundo del mismo, habrán de corresponderle

en concepto de copropietario de los bienes poseídos comunalmente; Estudiando detenidamente el concepto de la comunidad, la cual supone mientras ella subsiste un estado jurídico de indeterminación en los bienes indivisos que la constituyen, se comprenderá perfectamente que los derechos dominicales, en la efectividad de su ejercicio, se entienden circunscritos a aquella parte que en la totalidad indivisa representa la cuota de participación."

Ha declarado el Tribunal Supremo de España reiteradamente que la facultad concedida a los condueños de una finca para que puedan vender lo que en ella les corresponda, no legitima la venta de la parte fija y determinada que el vendedor designe a su arbitrio, sino la de aquella que le pertenezca luego que se haga la división. Sentencia de 18 de noviembre de 1879.

Comentando el artículo 399, supra, del Código Civil Español, dice Manresa en la página 467 del mismo tomo, obra citada:

"Y es que realmente las enajenaciones de los bienes comunes revisten una forma condicional, porque dependen en sus efectos del hecho futuro de la división, y si ésta no llegase a tener eficacia debido a la desaparición de la cosa común, o aun teniéndola, sufriesen grave quebranto los bienes objeto de la comunidad, sería injusto negar al comprador los derechos concedidos de modo general en el artículo 1486 del Código Civil" (igual al artículo 1375 de nuestro Código Civil, Edición 1930).

En el presente caso el demandante no solicita la venta en pública subasta de la totalidad de una porción de los bienes, sino de todo derecho, acción, interés o participación que por cualquier título pueda corresponder al demandado José J. Benítez en dicha porción. En nuestro sentir, el demandante no realiza ningún acto que perjudique los derechos de los demás comuneros al proceder a la venta en pública subasta de la participación o interés que pueda corresponder al deudor por la sentencia. Nótese que no se solicita la venta de una porción específica de la finca, sino de cualquier derecho, interés o participación que pueda tener el Sr. Benítez en el inmueble indiviso.

Esta misma cuestión ha sido laboriosamente debatida en la jurisprudencia americana, donde prevalece el principio de que los partícipes que no han tenido intervención en la disposición de los bienes de un comunero en particular, deben quedar completamente protegidos en sus derechos. El comprador adquiere sujeto a la limitación de no perjudicar los derechos de los demás partícipes en la cosa común. En algunos casos, particularmente los más antiguos, se sostiene la teoría de que la trasmisión de una parte de los bienes a un extraño puede ser ignorada por los demás partícipes al practicarse la división.

En el caso de *Duncan* v. *Sylvester,* 16 Me. 388, resuelto en 1839, se dice que la trasmisión hecha por un partícipe de su interés en una parte de la propiedad, puede ser anulada por sus copropietarios, al proceder a la partición, por la razón de que ningún partícipe, por sus propios actos, puede excluir a otro de una participación en la propiedad.

En el caso de *Stark* v. *Barret,* 15 Cal. 362, resuelto en 1860, se dijo que un partícipe no puede adjudicarse a sí mismo una porción específica del inmueble, ya que al efectuarse la partición, la parcela puede ser adjudicada a otro partícipe. El adquirente queda sujeto a la contingencia de perder la porción adquirida, si al dividirse la totalidad del inmueble, no se adjudica dicha porción al cedente.

En el caso de *Smith* v. *Benson,* 9 Vt. 138, 31 Am. Dec. 614, resuelto en 1837, se sostiene que un terrateniente en común no puede trasmitir por puntos y linderos una parte de la cosa común, sin el consentimiento del otro condueño, y se arguye que si estos traslados fuesen válidos, el copartícipe estaría obligado a dividir la propiedad con cada uno de los adquirentes, y que una finca que originalmente tuvo su valor, sujeta a ser dividida solamente entre los dos condueños, podría depreciarse completamente al tener que someterse a una perpetua subdivisión.

Las decisiones modernas reconocen al adquirente cierto derecho de carácter equitativo, que no debe ser ignorado,

siempre que no perjudique a los demás miembros de la comunidad.

En el caso de *Pellow* v. *Arctic Mining Co.*, 128 N. W. 920, resuelto por la Corte Suprema de Michigan en 1910, se dice lo siguiente:

"Un copropietario puede vender y enajenar el todo o cualquier parte alícuota de su condominio pro indiviso en toda la propiedad, pero no puede, sin el consentimiento del otro, enajenar un condominio pro indiviso en cualquier parte específica de la cosa común, ni puede, sin tal consentimiento o ratificación posterior del otro copropietario, trasmitir por puntos y linderos (*metes and bounds*) una porción específica de la heredad común, separándola así en forma tal que obligue al comunero que nada ha cedido. Freeman on Cotenancy, section 199; Tiffany on Real Property, section 170; Porter v. Hill, 9 Mass. 34, 6 Am. Dec. 22; De Witt v. Harvey, 4 Gray (Mass.) 486; Adam v. Iron Co., 7 Cush. (Mass.) 361; Staniford v. Fullerton, 18 Me. 229; Lessee of White v. Sayre, 2 Ohio 110. Pero cuando un copropietario trata de trasmitir, por puntos y linderos, su título sobre una parcela de la propiedad común, como lo hizo Harvey en el presente caso, su escritura no es nula, sino que crea derechos (*equities*) en su cesionario, que deben ser protegidos y hechos efectivos en cuanto sea posible, sin perjuicio del otro partícipe."

En el caso de *Hitt* v. *Caney Fork Gulf Coal Co.*, 124 Tenn. 344, 139 S. W. 693, se dice que la regla de que es nulo un título que trasmite una porción específica del terreno poseído en común, con su descripción por puntos y linderos, basada en que no debe complicarse el título de los demás partícipes sin su consentimiento, está sujeta a la limitación de que el terreno, si es susceptible de ser dividido de modo que pueda adjudicarse al adquirente la parcela descrita en el título, sin perjudicar a los demás condueños, debe hacerse así adjudicándose la parcela de acuerdo con el título. En el *syllabus* del caso de *Finlay* v. *Dubach,* 105 Kan. 664, 185 Pac. 886, aprobado por la corte, se dice que cuando el dueño de una mitad pro indivisa de una parcela de terreno de uniforme valor ejecuta un documento, trasmitiendo por puntos y linderos la totalidad de una porción específica del terreno, el título no es una nulidad. Aunque no se trasmita un com-

pleto título al adquirente, se le confieren, sin embargo, ciertos derechos de carácter equitativo que le autorizan, en el caso de una partición, a que se le adjudique la parcela descrita en su título, si esto puede hacerse sin perjuicio para los demás partícipes.

En el caso de *Seavey* v. *Green*, 1 Pac. (2d) 601, resuelto por la Corte Suprema de Oregon en 1931, se dijo:

"Hay también una regla de que una trasmisión por un dueño en común que describe por puntos y linderos una porción de la propiedad que se intenta trasmitir, será válida entre las partes como una trasmisión del interés del vendedor, con tal de que los derechos e intereses de los demás partícipes no sean perjudicados por tal interpretación. . . . Se observa siempre estrictamente la limitación de que este título no puede ser interpretado en el sentido de perjudicar a los condueños del vendedor. . . . Aunque hay algún conflicto en las decisiones, la regla general sostenida por el peso de las autoridades y la sana razón es que una corte de equidad hará efectivo en todas sus partes un título que trasmita un interés indiviso en una porción de una propiedad en común, cuando puede hacerse sin perjuicio o daño para los demás condueños."

Esta doctrina, sostenida por un gran número de decisiones, apela a la equidad y a la justicia, y se ajusta a los principios de nuestro derecho civil.

La parte apelada arguye que no pueden venderse en ejecución de sentencia bienes que no han sido embargados. Nuestro Código de Enjuiciamiento Civil, en su artículo 246, dice lo siguiente:

"Todas las cosas, semovientes, dinero y demás bienes, así muebles como inmuebles, o cualquier interés en ellos, pertenecientes al deudor declarado tal por la sentencia, no exentos por la ley, y toda propiedad y derecho respecto de ella, ocupado o embargado en el pleito, están sujetos a la orden de ejecución. Las acciones y participación en cualquiera corporación o compañía, y deudas y créditos y toda la propiedad real o personal o cualquier interés en la misma, y todos los demás bienes no susceptibles de entrega manual, podrán ser embargados en virtud de la orden de ejecución, de igual modo que en los autos de embargo. El oro en polvo o en pepitas deberá entregarse por el oficial como dinero cobrado, por su valor corriente en

plaza, sin ofrecerlo en venta. Hasta efectuarse un embargo, los bienes no estarán afectados por la orden de ejecución."

El artículo que antecede equivale al 668 del Código de Enjuiciamiento Civil de California. La Corte Suprema de este Estado dice en el caso de *Godfrey* v. *Monroe,* 101 Cal. 224, 35 Pac. 761, que cualquier interés legal o equitativo que el demandado tenga en propiedad inmueble, está sujeto a embargo o ejecución.

La totalidad de la finca que se describe en la demanda fué embargada como de la propiedad del demandado José J. Benítez, quien arguye que su participación no ha sido objeto de embargo y que por lo tanto no puede ser ejecutada.

En el caso de *Davis* v. *Barnard,* 60 N. H. 550, 551, la Corte Suprema de New Hampshire se expresó así:

"El demandado embargó para ser ejecutada toda la propiedad, la mitad de la cual pertenecía a la demandante y la otra mitad al deudor por la sentencia. Conforme a todas las autoridades, el embargo trabado fué válido contra John K. Davis; y aunque el diligenciamiento demuestra que toda la finca fué embargada, en realidad su mitad, y solamente esa mitad, pasó al acreedor a virtud del embargo. Éste no afectó el título de la demandante en cuanto a la otra mitad de la finca. Ella no fué parte en el embargo ni queda obligada por nada de lo que se hizo que afectara su participación. Ella continúa siendo dueña de una mitad indivisa y el demandado vino a ser dueño de la otra mitad en común pro indiviso con ella. Al radicar cualquiera de ellos una solicitud para que se haga la partición, nada hay en el embargo que impida que se dicte sentencia ordenando que se haga la partición. El demandado sostiene que él es dueño únicamente de la mitad que pertenecía a John K. Davis, y no pretende tener derecho a la mitad perteneciente a la demandante. Como el embargo no puede surtir efecto alguno sobre los derechos de la demandante, al hacerse la partición ésta debe practicarse independientemente del embargo. La demandante tiene derecho a que se dicte un decreto al efecto de que el demandado le haga entrega de la mitad indivisa de la finca."

Opinamos que la participación o interés de José J. Benítez en la finca embargada puede ser vendida para satisfacer la sentencia. En su demanda en el pleito de tercería, la parte

apelada nos dice que dicha finca fué embargada para asegu-- rar la efectividad de la sentencia que pudiera dictarse contra José J. Benítez, anotándose dicho embargo en el registro de la propiedad. En su moción de 13 de julio de 1932, solici- tando se dejase sin efecto la orden de ejecución, el propio señor José J. Benítez nos dice que en el mes de agosto, 1930, se embargó como de su propiedad la finca en cuestión para asegurar la efectividad de la sentencia en el pleito seguido contra él, y se añade que el inmueble está inscrito en el re- gistro de la propiedad, al folio 17 del tomo 62 de la capital, inscripción tercera. La primera inscripción de este inmueble a favor de la comunidad se practicó en octubre 23 de 1930. Es verdad que el embargo se trabó en la totalidad de la finca, pero estando la parte comprendida en el todo, estimamos que la porción de José J. Benítez en la propiedad referida quedó también embargada y que puede venderse en pública subasta la referida porción al ejecutarse la sentencia dictada a favor del demandante.

*Debe revocarse la resolución dictada por la corte inferior en 9 de agosto de 1932, y devolverse el caso a dicha corte para ulteriores procedimientos de acuerdo con los términos de esta opinión.*