

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| BL Investments Inc.<br><br>        Peticionario<br><br><br>                    v.<br><br>Franklyn Rivera Rivera<br>Registrador de la Propiedad,<br>Sección de Fajardo<br><br>        Recurrido | <br><br><br><br>2011 TSPR 30<br><br>181 DPR _____ |

Número del Caso: RG        - 2008 - 3


Fecha: 4 de marzo de 2011


Abogado de la Parte Peticionaria

                        Lcdo. Teodoro L. Tapia Gomez


Registrador de la Propiedad:

                        Lcdo. Franklin Rivera Rivera
                        Registrador


Materia:      Recurso Gubernativo


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

BL Investments Inc.

    Peticionario

       v.

Franklyn Rivera Rivera
Registrador de la Propiedad,
Sección de Fajardo

    Recurrido

*Recurso Gubernativo*

RG-2008-03

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

San Juan, Puerto Rico, a 4 de marzo de 2011.

El peticionario, BL Investments Inc., nos solicita que revoquemos la recalificación del Registrador de la Propiedad de la Sección de Fajardo, Hon. Franklin Rivera Rivera, mediante la cual denegó la inscripción de una escritura de venta judicial. La escritura le concedía al peticionario el cincuenta por ciento (50%) en común pro indiviso de una finca como perteneciente al Sr. Eduardo Enrique Sánchez Claudio. No obstante, según consta en el Registro de la Propiedad, ésta fue adquirida por el matrimonio formado por el señor Sánchez Claudio y la Sra. Emma Maymí García, quien falleciera intestada posteriormente.

Resolvemos que no procede su inscripción en el Registro de la Propiedad en vista de que la comunidad postganancial formada por el señor Sánchez Claudio y los herederos de la causante no ha sido liquidada. A su vez, los herederos no han consentido a la otorgación de la escritura de venta judicial de una participación específica sobre el inmueble.

A continuación, exponemos los hechos que dieron génesis a la controversia ante nuestra consideración.

**I**

El 13 de septiembre de 1973 el Sr. Eduardo Sánchez Claudio y su esposa, la Sra. Emma Maymí García compraron la finca 5534, inscrita al Folio 95 del Tomo 103 del Registro de la Propiedad de Luquillo. Surge del Registro de la Propiedad el fallecimiento de la señora Maymí García el 12 de febrero de 1987 y la subsiguiente inscripción del derecho hereditario a favor de los herederos de la causante con relación a la finca.[1]

Así las cosas, BL Investments Inc. obtuvo una Sentencia en Rebeldía de cobro de dinero contra el señor Sánchez Claudio por la suma de veintidós mil quinientos dólares ($22,500.00) de principal, catorce mil doscientos ochenta y seis dólares con cuarenta y cinco centavos ($14,286.45) de intereses al 18 de junio de 1998 y los que de ahí en adelante se acumularan al *prime rate* anual, y la

---

[1] La Sucesión de Maymí García está compuesta por sus hijos – Eduardo Enrique Sánchez Maymí, Ana Alicia Sánchez Maymí y Miguel Ángel Sanchez Maymí – así como su esposo en cuanto a la cuota usufructuaria.

suma de dos mil doscientos cincuenta dólares ($2,250.00) por honorarios de abogado. La misma fue anotada en el Registro de Sentencias del Registro de la Propiedad el 24 de abril de 2003. Posteriormente, se obtuvo Orden y Mandamiento de Ejecución de la Sentencia para "la venta en pública subasta de la porción de 50% del demandado del … inmueble para con el producto de la venta pagar a la parte demandante las cantidades adeudadas de la Sentencia".[2]

El 4 de diciembre de 2003 se celebró la subasta y se adjudicó la buena pro al peticionario por la suma de treinta y nueve mil treinta y seis dólares con cuarenta y cinco centavos ($39,036.45). A tenor con el Acta de Subasta emitida, el 25 de marzo de 2004, el Notario Teodoro L. Tapia Gómez otorgó la Escritura Núm. 44 de Venta Judicial por la cual el peticionario adquiría el cincuenta por ciento (50%) pro indiviso de Eduardo Enrique Sánchez Claudio en la propiedad.

Así las cosas, el 23 de abril de 2004, BL Investments Inc. presentó la Escritura al Registro. Empero, su inscripción fue denegada el 30 de agosto de 2007 toda vez que la finca aparece inscrita a favor del señor Sánchez Claudio y sus hijos, mientras que en la Escritura solamente comparecía como demandado el señor Sánchez Claudio. Oportunamente, el peticionario presentó Escrito de Recalificación en el que alegó que el señor Sánchez Claudio era dueño del cincuenta por ciento (50%) pro

---

[2] Apéndice del Recurso Gubernativo, págs. 10-13.

indiviso de la propiedad y que no existía "disposición legal alguna que prohíba la compraventa de la parte de un codueño, y por el contrario el Artículo 333 del Código Civil, 31 L.P.R.A. 1278, lo permite".[3]

Por su parte, el Registrador denegó la inscripción el 8 de noviembre de 2007. Apuntó que

> La finca consta inscrita a favor de una comunidad hereditaria en la que los herederos y el viudo son los dueños de todos los activos y pasivos del causante hasta que ocurra el acto particional. El Art. 95 de la Ley Hipotecaria dispone que no se inscribirán enajenaciones o gravámenes de cuotas específicas en una finca que no se haya adjudicado antes en la correspondiente partición. Caso de Sociedad de Gananciales v. Registrador, 151 D.P.R. 315 (2000).
>
> El acto particional confiere a cada heredero la propiedad exclusiva de los bienes que le hayan sido adjudicados. Art. 1021 CCPR, 31 LPRA 2901.
>
> No es inscribible la venta judicial ante nuestra consideración porque no es ejecutable una participación concreta de una finca perteneciente a una comunidad hereditaria en la que no ha mediado una partición y adjudicación. Caso de Osorio v. Registrador, 113 DPR 136 (1982).[4]

El peticionario instó un nuevo Escrito de Recalificación. Expresó que aunque el cincuenta por ciento (50%) de la propiedad fue inscrito a favor de la comunidad hereditaria, el restante "constaba inscrito a favor del señor Sánchez Claudio como patrimonio exclusivo en común pro indiviso, por ser su mitad ganancial de la adquisición por compra que realizó junto a su esposa, ya

---

[3] Apéndice del Recurso Gubernativo, pág. 25.
[4] Apéndice del Recurso Gubernativo, pág. 26.

fallecida".[5] Añadió que era solamente con relación a la mitad perteneciente a la comunidad hereditaria sobre la que operaba el Art. 95 de la Ley Hipotecaria, 31 L.P.R.A. sec. 2316. Señaló que dicha disposición no permitía la inscripción de cuotas específicas antes de la partición de la herencia, salvo cuando comparecieran todos los herederos en escritura pública dando su consentimiento, o mediando Resolución judicial firme. Concluyó que la venta judicial de referencia era inscribible en cuanto al cincuenta por ciento (50%) de la propiedad perteneciente al señor Sánchez Claudio puesto que el acreedor de un comunero puede, para hacer efectivo su crédito contra éste, embargar la participación o interés exclusivo de los bienes, y venderla y adjudicársela en subasta pública de conformidad con lo expresado en *Carle Dubois v. Benítez*, 46 D.P.R. 188 (1934).

El 21 de enero de 2008 el Registrador de la Propiedad denegó la inscripción de la Escritura por los mismos fundamentos esgrimidos en la notificación del 8 de noviembre de 2007.

Inconforme, el peticionario presentó el Recurso Gubernativo de autos el 7 de febrero de 2008. Señaló las siguientes objeciones a la calificación:

1. **Erró el Honorable Registrador de la Propiedad al determinar que la finca de la que se enajena el cincuenta porciento perteneciente a Eduardo E. Sánchez Claudio en la Escritura de Venta Judicial consta inscrita a favor de una comunidad hereditaria.**

---

[5] Apéndice del Recurso Gubernativo, pág. 27.

2. **Erró el Honorable Registrador de la Propiedad al determinar que la escritura de venta judicial es una ejecución de una participación concreta de una finca perteneciente a una comunidad hereditaria.**

3. **Erró el Honorable Registrador de la Propiedad al denegar la inscripción de la escritura de venta judicial cuarenta y cuatro de veinticinco de marzo del dos mil cuatro ante el notario Teodoro L. Tapia Gómez.**

El peticionario presenta ante nos los mismos argumentos expuestos en sus Escritos de Recalificación.

Por su parte, el Registrador expresa que del Registro surge que la finca está inscrita a nombre del señor Sánchez Claudio y de sus hijos como miembros de una comunidad de herederos. Arguye que aunque el derecho hereditario en abstracto es enajenable, no es así respecto a un inmueble en específico. Esboza que hasta que ocurra el acto particional, todos los activos y pasivos pertenecen a la comunidad hereditaria. Sostiene, además, que dado que la Escritura cede una porción específica sobre un inmueble, ésta no procede en derecho. Añade que tres (3) de los cuatro (4) herederos no fueron traídos como parte ni notificados de la acción de cobro de dinero.

Contando con la comparecencia de ambas partes, procedemos a resolver.

## II

### A. La Sociedad de Gananciales y la Comunidad Postganancial

La sociedad de gananciales es el régimen económico supletorio establecido en el Código Civil de Puerto Rico que rige durante el matrimonio a falta de capitulaciones

matrimoniales válidas. R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, San Juan, Ed. Programa de Educación Jurídica Continua Universidad Interamericana de Puerto Rico, 1997, Vol. 1, pág. 320. Ésta empieza el día de la celebración del matrimonio y concluye al disolverse, ya sea por muerte, divorcio o nulidad. 31 L.P.R.A. secs. 3681 y 3712.

Durante su vigencia, existe una presunción de gananciabilidad sobre todos los bienes del matrimonio, así como sobre las deudas y obligaciones que fueran asumidas por cualquiera de los cónyuges durante el mismo. 31 L.P.R.A. secs. 3647 y 3661. Véase, *Muñiz Noriega v. Muñoz Bonet*, res. en 29 de enero de 2010, 177 D.P.R. ___ (2010), 2010 T.S.P.R. 13; 2010 J.T.S. 22; *Robles Ostolaza v. U.P.R.*, 96 D.P.R. 583 (1968). No obstante, su disolución conlleva la separación de propiedad y bienes de todas clases entre los cónyuges. 31 L.P.R.A. sec. 381.

Tras la disolución del matrimonio, y por consiguiente la conclusión de la sociedad de gananciales, ambos ex cónyuges participan por partes iguales en una comunidad de bienes ordinaria que exhibe características propias y que está compuesta por todos los bienes del haber antes ganancial.[6] Véanse, J.L. LaCruz Berdejo y otros, *Elementos*

---

[6] Sin embargo, de no liquidarse la comunidad de bienes en un plazo corto, cabe examinar si el aumento o disminución del valor del patrimonio al momento de la liquidación responde al mero pasar del tiempo o a la gestión exclusiva de uno de los cónyuges, puesto que de rebatirse la presunción de equivalencia de cuotas, el aumento en valor del bien o en la producción de frutos se dividirá conforme al trabajo y gestión de cada ex cónyuge. *Montalván v. Rodríguez*, 161 D.P.R. 411 (2004).

*de Derecho Civil*, 4ta ed., Barcelona, Ed. Bosch, Tomo IV, 1997, pág. 353. Serrano Geyls, *op. cit.*, pág. 457; J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, Tomo IV, 1985, pág. 164. Esta comunidad postganancial está carente de regulación legal, pero como hemos expresado, está sujeta a las normas establecidas en los Arts. 326 al 340 del Código Civil de no haber contrato o disposiciones especiales. 31 L.P.R.A. secs. 1271-1285. Véanse, *Montalván v. Rodríguez*, 161 D.P.R. 411, 421-422 (2004); *Metropolitan Marble Corp. v. Pichardo*, 145 D.P.R. 607 (1998); *Calvo Mangas v. Aragonés Jimenez*, 115 D.P.R. 219 (1984). **Sin embargo, se distingue por ser una comunidad ordinaria de la que sus comuneros ostentan una cuota abstracta sobre la antigua masa ganancial y no una cuota concreta sobre cada bien que la compone.** *Muñiz Noriega v. Muñoz Bonet*, supra; *Pagán Rodríguez v. Registradora,* res. en 16 de noviembre de 2009, 177 D.P.R. __ (2009), 2009 T.S.P.R. 175, 2009 J.T.S. 178; *Cruz v. Sucn. González*, 72 D.P.R. 308, 318 (1951). Véanse: Serrano Geyls, *op. cit.*, pág. 457; LaCruz Berdejo y otros, *op. cit.*, págs. 353-354; L. Díez-Picazo y otros, *Sistema de Derecho Civil*, 7ma ed., Ed. Tecnos, Vol. IV, 1997, págs. 215-216. Véase además, R. Rosario Cortés, *La comunidad de bienes antes y después de disolverse el matrimonio: sociedad legal de gananciales y comunidad de bienes postganancial*, 44 Rev. Jur. U. Inter. P.R. 67, 73-74 (2009-2010). Tal característica la asemeja a la

comunidad hereditaria.[7] LaCruz Berdejo y otros, *op. cit.*, pág. 354; M. Albaladejo, *Comentarios al Código Civil y Compilaciones Forales*, Ed. EDERSA, 1999, T. XVIII, Vol. II, págs. 587-591; A. De Cossio y Corral, *Tratado Práctico y Crítico de Derecho Civil*, Madrid, Ed. Instituto Nacional de Estudios Jurídicos, 1963, pág. 248. Esto, pues, "se mezclan y confunden provisionalmente los bienes de los ex cónyuges hasta que se liquida finalmente la comunidad"; momento en el cual se concreta el derecho a la mitad del patrimonio en bienes determinados. *Montalván v. Rodríguez*, *supra*, pág. 416; *Muñiz Noriega v. Muñoz Bonet*, *supra*. Véase además, Rosario Cortés, *supra*.

Por otra parte, durante la vigencia de la comunidad postganancial, que puede extenderse por un tiempo prolongado hasta su liquidación, cada uno de los cónyuges posee una cuota independiente, alienable y homogénea con el correspondiente derecho a intervenir en la administración de los bienes comunes y a pedir su división. *Montalván v. Rodríguez*, *supra*, págs. 421-422, citando a LaCruz Berdejo y otros, *op. cit.*, pág. 353; *Vega v. Tossas*, 70 D.P.R. 392 (1949). Por lo tanto, el cónyuge puede válidamente vender, ceder o traspasar sus derechos y acciones sobre la masa de la comunidad previo a su liquidación final, mas no puede disponer por sí mismo de

---

[7] Las disposiciones relativas a la aceptación de la herencia a beneficio de inventario y el derecho a deliberar aplican al proceso de liquidación de la sociedad de gananciales como derecho supletorio. 31 L.P.R.A. sec. 3699. Véase, *Janer Vilá v. Tribunal Superior*, 90 D.P.R. 281 (1964).

bienes de la comunidad, o cuotas determinadas y específicas de éstos debido a que la comunidad se gobierna por el "régimen de mayorías para la gestión y de unanimidad para los actos de disposición". LaCruz Berdejo y otros, *op. cit.*, págs. 353-354. Véase, *Alameda v. Registrador*, 76 D.P.R. 230 (1954); *Cruz v. Sucn. González*, *supra*; *Cortés v. El Registrador*, 20 D.P.R. 141 (1914); *Escalera v. Falú et al.*, 19 D.P.R. 751 (1913). Véanse además, A. De Cossio y Corral, *supra*, págs. 244-245. No obstante, cabe señalar que el comprador adquiere estos derechos y acciones sujetos a la liquidación. Véase, *Alameda v. Registrador*, *supra*; *Vega v. Tossas*, *supra*.

Por todo lo anterior, no podemos sostener que tras la disolución del matrimonio y previo a la liquidación de la comunidad postganancial, el cónyuge deudor tenga inscrita la mitad del bien antes ganancial, sino que debe esperar a que el bien o fracción de éste le sea adjudicado. Pues, no es hasta la liquidación de la comunidad - proceso que requiere la formación de un inventario, el avalúo y tasación de los bienes, así como el pago de deudas, cargas y obligaciones de la extinta sociedad de gananciales - que se puede afirmar la existencia de un sobrante o ganancia a dividirse y adjudicarse entre los ex cónyuges o sus respectivos herederos. 31 L.P.R.A. secs. 3691-3701. *Muñiz Noriega v. Muñoz Bonet*, *supra*; *Janer Vilá v. Tribunal Superior*, 90 D.P.R. 281 (1964).

## B. Herederos del Cónyuge Finado y la Comunidad Postganancial

Por otra parte, debemos destacar que ante el fallecimiento de uno de los cónyuges, el patrimonio en liquidación tiene dos (2) titulares: el cónyuge superviviente y los herederos del cónyuge fallecido. Véanse, *Méndez v. Ruiz Rivera*, 124 D.P.R. 579 (1989); *Cortés v. El Registrador*, *supra*. Véanse además, LaCruz Berdejo y otros, *op. cit.*, pág. 353; Serrano Geyls, *op. cit.*, pág. 457; Puig Brutau, *op. cit.*, pág. 164. Éstos últimos "reciben la misma posición que hubiera tenido su causante en la comunidad disuelta". LaCruz Berdejo y otros, *op. cit.*, pág. 354.

En tales casos, el proceso de liquidación de la comunidad postganancial es requisito para la posterior partición entre herederos. Véase, *Méndez v. Ruiz Rivera,* 124 D.P.R. 579 (1989)*; Piazza v. Registrador*, 78 D.P.R. 301 (1955). Véase además, E. González Tejera, *Derecho de Sucesiones*, San Juan, Ed. Universidad de Puerto Rico, 2005, pág. 491. Esto pues, ambas comunidades coexisten y no es hasta la liquidación de la primera que se puede determinar lo que finalmente le corresponde a la segunda. L. Zarraluqui Sánchez-Eznarriaga, *Derecho de Familia y de la Persona*, Barcelona, Ed. Bosch, 2007, pág. 338; A. De Cossio y Corral, *Tratado Práctico y Crítico de Derecho Civil*, Madrid, Instituto Nacional de Estudios Jurídicos, 1963, págs. 242 y 252.

Ahora bien, durante la indivisión de la comunidad postganancial, ésta se rige por las reglas aplicables a

este tipo de comunidad. De Cossio y Corral, *supra*, pág. 250. No obstante, dado a las similitudes que comparten ambas comunidades y ante la carencia de reglamentación legal, las normas de la comunidad hereditaria nos sirven de guía y pueden resultar aplicables por analogía con las adecuaciones necesarias. LaCruz Berdejo y otros, *op. cit.*, pág. 354.

## C. Efectos registrales durante la comunidad postganancial

Por otro lado, ante la conclusión de la sociedad de gananciales y la indivisión de la comunidad postganancial se generan numerosas situaciones con efectos registrales. Algunas han sido atendidas por nuestro ordenamiento. Por ejemplo, ya hemos sancionado la inscripción de la venta, cesión o traspaso de derechos y acciones sobre la masa de la comunidad postganancial previo a su liquidación. *Cortés v. El Registrador*, *supra*. No obstante, la inscripción de una enajenación está sujeta al resultado de la liquidación de la comunidad cuando no hay acuerdo entre los titulares para ello. *Alameda v. Registrador*, supra, pág. 246.

Asimismo, en aquellos casos en que el matrimonio se disuelve por divorcio, el Art. 1330 del Código Civil, 31 L.P.R.A. sec. 3714, permite la inscripción de la sentencia firme de divorcio de ésta recaer sobre bienes inmuebles. Sin embargo, el Reglamento de la Propiedad requiere para dichos casos iguales medidas que para la inscripción del derecho hereditario, restringiendo así la transmisión e inscripción de una participación concreta sobre una finca:

A tenor con lo dispuesto en el Artículo 95 de la "Ley Hipotecaria y del Registro de la Propiedad" [30 L.P.R.A. sec. 2316] y la sec. 870.198 de este título, tanto en la inscripción del derecho hereditario como en la sentencia de divorcio que pueda inscribirse bajo el Artículo 1330 del "Código Civil" [31 L.P.R.A. sec. 3714], el Registrador hará constar claramente que la finca o derecho donde se inscriba pertenece a un patrimonio indiviso y que no podrán ser transmitidos o gravados cuotas o porciones del dominio sobre la finca o derecho que se trate, si no por todos los titulares, a menos que haya mediado partición y adjudicación inscrita a favor del transmitente". Art. 102.1 del Reglamento de la Propiedad. Véase además, *Pagán Rodríguez v. Registradora, supra*.

Estos límites para la transmisión o gravamen de bienes de la comunidad postganancial surgida por divorcio, así como para su inscripción en el Registro de la Propiedad, obedecen a que ambos cónyuges o sus herederos son copartícipes por partes iguales de la masa en liquidación como expusiéramos previamente. Puesto que los intereses que se pretenden proteger y los efectos que acarrean son similares, la postura que ha tomado nuestro ordenamiento en cuanto a la transmisión de bienes de la comunidad postganancial surgida por divorcio, así como para el derecho hereditario, es aplicable a la comunidad post ganancial en caso del fallecimiento de uno de los cónyuges. **Por lo tanto, tampoco se inscribirán enajenaciones o gravámenes de cuotas específicas en un inmueble que no haya sido adjudicado antes en la correspondiente liquidación de la comunidad postganancial, salvo previa partición y adjudicación inscrita a favor del**

**transmitente o por el consentimiento de todos los titulares.**

Por otro lado, en cuanto a la inscripción del derecho hereditario, el Art. 95 de la Ley Hipotecaria, *supra,* establece en lo pertinente que:

…

> Se inscribirá el derecho hereditario a favor de todos los que resultaren herederos, cuando se trate de bienes adquiridos por herencia y no se haya hecho todavía la correspondiente partición, si lo solicita alguno de los interesados; expresándose en el asiento la parte que a cada uno de ellos corresponda y el derecho a la cuota usufructuaria del cónyuge supérstite, si lo hubiere. **En el caso de que se tratare de bienes que tengan la presunción de gananciales, la inscripción se verificará sólo en cuanto a la parte que pudiera corresponder al cónyuge difunto.**
>
> …
>
> Para inscribir adjudicaciones concretas, deberán determinarse en escritura pública o por resolución judicial firme, los bienes o partes indivisas de los mismos que correspondan o se adjudiquen a cada titular o heredero, o también escritura pública a la cual hayan prestado su consentimiento todos los interesados, si se adjudicare solamente una parte del caudal y aquellos tuvieren la libre disposición del mismo.
>
> No se inscribirán enajenaciones o gravámenes de cuotas específicas en una finca que no se haya adjudicado antes en la correspondiente partición. 30 L.P.R.A. sec. 2316. (Énfasis suplido).

Por lo tanto, ante un presunto bien ganancial, el Registrador de la Propiedad carece de facultad para extender la inscripción del derecho hereditario a la totalidad del bien. Éste debe limitar la inscripción a favor de los herederos a lo que, según el Registro, correspondía al causante con relación a los bienes de la

comunidad postganancial.[8]  Para ello no se requiere la liquidación previa de la sociedad de gananciales. *Piazza v. Registrador*, *supra*, pág. 304.

**D. Acreedores Privativos de un Titular de la Comunidad Postganancial**

Con relación a los acreedores de la extinta sociedad de gananciales aplica la máxima de que "[l]a separación de bienes no perjudicará a los derechos adquiridos con anterioridad por los acreedores". 31 L.P.R.A. sec. 3715. Sin embargo, en cuanto a las deudas adquiridas por uno de los cónyuges tras la disolución del matrimonio, éstas recaen sobre su propio patrimonio y no sobre el patrimonio común. Por ende, como cualquier otra obligación, el deudor responde con todos sus bienes presentes y futuros, incluyendo los que le correspondan de la comunidad postganancial. 31 L.P.R.A. sec. 5171. Empero, sobre estos últimos bienes - de conformidad con lo expresado - la responsabilidad se limita a la cuota abstracta del deudor

---

[8] Este Tribunal se expresó con relación al límite de la inscripción del derecho hereditario en bienes que forman parte de una comunidad postganancial, previo a que se promulgara la Ley Hipotecaria de 1979. En *García v. El Registrador de Guayama*, 27 D.P.R. 624, 627 (1919), expresamos que

> "Todo lo que correspondía al difunto corresponde ahora a sus herederos y para verificar la inscripción en que así conste no se requiere en verdad como elemento indispensable la liquidación de la sociedad de gananciales… [E]l registrador teniendo en cuenta las constancias del registro pudo limitarse a inscribir lo que, según el registro, correspondía al causante de los peticionarios, esto es, la mitad de las fincas, sujeta la inscripción a las resultancias de la liquidación de la sociedad de gananciales".

Hoy día, las disposiciones pertinentes de la Ley Hipotecaria requieren expresamente la inscripción del derecho en cuanto a lo que le correspondería al cónyuge finado con relación a los bienes de la comunidad postganancial.

en la masa común y no podrá concretarse en bienes determinados sino hasta la liquidación de la comunidad. Díez-Picazo y otros, *op. cit.*, pág. 216.

A pesar de que la normativa antes expuesta es adecuada para resolver la controversia ante nos, estimamos prudente examinar como se ha atendido este asunto en España. A estos efectos, observamos que la distinguida Dirección General de los Registros y del Notariado de España[9] ya ha examinado esta controversia desde hace décadas, es decir, ha analizado la enajenación de los derechos que a un ex cónyuge le pueda corresponder sobre un bien común, y ha admitido que

> Disuelta la sociedad de gananciales y en tanto se ultima su liquidación, no puede afirmarse que la propiedad de cada uno de los concretos bienes que la integra corresponda a los cónyuges por cuotas indivisas, de las que puedan disponer separadamente o que puedan ser ejecutadas para la satisfacción de sus deudas privativas...

> ...Debe tenerse en cuenta, además, que la satisfacción previa de las deudas y cargas de la sociedad conyugal puede determinar, incluso, la inexistencia misma de remanente partible...

> Bien se comprende que los pretendidos "derechos de un cónyuge sobre un concreto bien de la sociedad ganancial disuelta pero no liquidada" carecen de sustantividad jurídica y no pueden ser configurados como un verdadero objeto de derecho susceptible de enajenación judicial; la incertidumbre sobre su mismo contenido impide su adecuada tasación y hace inviable su subasta en términos que garanticen equitativamente todos los

---

[9] La doctrina de la Dirección General de los Registros y del Notariado "constituye un alto y científico cuerpo de doctrina en materia civil e hipotecaria, que orienta, aunque no vincule, en el proceso o procedimiento relativo a la inscripción, suspensión o denegación de los asientos solicitados". J.L. LaCruz Berdejo y otros, *Elementos de Derecho Civil: III Bis Derecho Inmobiliario Registral*, Madrid, Dykinson, 2001, págs. 292-294, citando la Sentencia de 22 de diciembre de 1994.

intereses concurrentes, así los del ejecutado como los del actor y los de los eventuales postores... Resolución de 8 de julio de 1991, de la Dirección General de los Registros y del Notariado, BOE Núm. 202 de 23 de agosto de 1991. Véase además, Resolución de 6 de noviembre de 2009 de la Dirección General de los Registros y del Notariado, BOE Núm. 7 de 8 de enero de 2010.

Por los mismos fundamentos, la Dirección General de los Registros y del Notariado incluso ha rechazado el reflejo registral para el embargo de derechos de un titular sobre bienes concretos de la comunidad postganancial. Resolución de 20 de junio de 2007 de la Dirección General de los Registros y del Notariado, BOE Núm. 173 de 20 de julio de 2007. Esto a diferencia del embargo de la cuota global que le corresponde al ex cónyuge de la comunidad postganancial; embargo que se puede anotar en lo que le pueda corresponder al deudor. Véanse, J.L. Seoane Spiegelberg, *La Protección del Acreedor en la Sociedad Legal de Gananciales*, en *Temas de Actualidad en Derecho de Familia*, Madrid, Ed. Dykinson, 2006, pág. 233; Díez-Picazo y otros, *op. cit.*, pág. 216.

El análisis descrito nos persuade. Dado que durante la comunidad postganancial el ex cónyuge solamente posee una cuota abstracta sobre la masa comunal, es contra ese interés sobre el que se puede dirigir el acreedor de las deudas privativas de éste. No obstante, los acreedores del cónyuge deudor, no quedan desprotegidos puesto que

nuestro Código Civil contiene un sistema completo de defensa en favor de dichos acreedores, y no hace distinción entre las ocultaciones, simulaciones o enajenaciones hechas por otros deudores, en cualesquiera otras clases de obligaciones, y las ocultaciones, simulaciones o

enajenaciones hechas por los cónyuges durante el matrimonio, o durante la comunidad de bienes que se produce desde que [se]disuelve la sociedad hasta que la liquidación y adjudicación final, a su vez, disuelve la comunidad. *Alameda v. Registrador*, *supra*, pág. 241.

A esos efectos, el acreedor tiene a su disposición los remedios provistos con carácter general por el ordenamiento.[10]

## III

Dentro del marco jurídico antes enunciado procedamos a resolver la controversia de autos.

Comencemos por apuntar que hay presunción de gananciales sobre la finca 5534. Así las cosas, tras el fallecimiento de la señora Maymí García, los titulares del inmueble son: el señor Sánchez Claudio y los herederos de la cónyuge finada. El primero en cuanto a su cuota en la comunidad postganancial y en lo que le corresponda por ley con carácter de heredero forzoso; los segundos en cuanto a la posición que hubiera tenido su causante en la comunidad. No obstante, ambos ostentan una cuota abstracta sobre la masa ganancial, y poseen sobre el referido inmueble, aquel interés que el derecho sobre la totalidad del patrimonio les concede.

Aunque el peticionario objeta la determinación del Registrador de la Propiedad respecto a que la finca consta inscrita a favor de una comunidad hereditaria, tal determinación es correcta en cuanto a la parte que pudiera

---

[10] En *Alameda v. Registrador*, 76 D.P.R. 230 (1954), tuvimos la oportunidad de hacer un análisis profundo sobre las acciones que tiene disponible el acreedor para proteger la realización de su derecho al cobro de un crédito durante la comunidad postganancial.

corresponder al cónyuge difunto. Esto a tenor con el Art. 95 de la Ley Hipotecaria, *supra*, que dispone que la inscripción del derecho hereditario se verificará sólo en cuanto a la parte que pudiera corresponder al cónyuge difunto. Como consecuencia, dicha comunidad no abarca la totalidad del bien. Por lo tanto, es incorrecto señalar que no es transmisible una participación concreta de la finca hasta la partición y adjudicación de la comunidad hereditaria. Habrá que esperar a la liquidación de la comunidad postganancial para confirmar tal expresión.

En el caso de autos, surge del Registro de la Propiedad la inscripción a favor de los herederos de la participación del causante, y por consiguiente, el régimen de comunidad postganancial en el que se halla el inmueble.[11]

Por otro lado, a pesar de que el señor Sánchez Claudio tiene derechos sobre parte de la comunidad post

---

[11] Cónsono con  esto y con relación a la finca, surge de la inscripción del derecho hereditario en el Registro lo siguiente:

> Descripción: Urbana: Descrita conforme.
> Cargas: Servidumbres que se relacionan en la inscripción 1ra, y a la hipoteca que resulta de la misma.
> Inscrita a favor de Eduardo E. Sánchez Claudio y su esposa Emma Maymi.
> Titular fallecido: Emma Maymí García … falleció en Río Piedras, el día 12 de febrero de 1987, sin otorgar testamento.
> …
> En Resolución emitida el día 12 de marzo de 1990, fueron declarados únicos y universales herederos de la causante sus hijos … y su esposo Eduardo Enrique Sánchez Claudio, … en la cuota usufructuaria que determina la ley.
> …
> Instancia dirigida al Registrador de la Propiedad de fecha 25 de mayo de 1990, suscrita bajo affidavit número 8766 ante Frank Quiñones, en que se solicita se inscriba la participación del causante a favor de los mismos.

ganancial y tiene la facultad para vender, ceder o traspasar sus derechos en los bienes de la comunidad previo a su liquidación final, a éste le corresponde solamente una cuota abstracta sobre la masa ganancial y no una cuota concreta sobre cada bien. Dicha cuota - que en un principio es la mitad de los beneficios y las cargas - se materializará posteriormente a través de la liquidación de la comunidad; momento en que se conocerá si existen o no bienes gananciales a repartir a su favor y si la finca en cuestión es uno de ellos. A estos mismos principios está sujeto el comprador de tales derechos.

El peticionario argumenta que a tenor con el Art. 333 del Código Civil, 31 L.P.R.A. sec. 1278, y lo resuelto en *Carle Dubois v. Benítez*, *supra*, el acreedor de un comunero puede embargar la participación o interés en su parte específica de los bienes y venderla en subasta pública para hacer efectivo su crédito contra el comunero-deudor.[12] No nos convencen sus argumentos tras examinar con detenimiento los hechos ante nos.

---

[12] Reza el Art. 333 del Código Civil, 31 L.P.R.A. sec. 1278, como sigue:

> Todo condueño tendrá la plena propiedad de su parte y la de los frutos y utilidades que le correspondan, pudiendo en su consecuencia enajenarla, cederla o hipotecarla, y aun sustituir otro en su aprovechamiento y darla en arrendamiento, salvo si se tratare de derechos personales, pero el efecto de la enajenación o de la hipoteca con relación a los condueños, estará limitado a la Proción que se les adjudique en la división al cesar la comunidad, y el efecto del arrendamiento será conferir al arrendatario, durante el término del contrato, las facultades del condueño en orden a la administración y mejor disfrute de la cosa común.

Ciertamente, la comunidad postganancial es una comunidad de bienes ordinaria que está sujeta a las normas establecidas en los Arts. 326 al 340 del Código Civil, 31 L.P.R.A. secs. 1271-1285, de no haber contrato o disposiciones especiales. No obstante, hemos señalado que la comunidad postganancial como sucesora de la sociedad de gananciales tiene unas características propias y que a pesar de que sus comuneros cuentan con una cuota, la misma no recae sobre cada bien, sino sobre la totalidad de la masa otrora ganancial. Por lo tanto, la aplicación de las disposiciones de la comunidad de bienes ordinaria se circunscribe a aquello compatible con la naturaleza de la comunidad postganancial. Por ello, el embargo de la participación del comunero debe atenerse a las particularidades de la comunidad postganancial, esto es, al interés del comunero en la masa y no en un bien específico.

Además, el caso de autos es distinguible de lo resulto en *Carle Dubois v. Benítez*, *supra*. En dicho caso autorizamos el embargo y venta de la participación correspondiente al señor Benítez Díaz en un bien de la comunidad que éste formara con herederos de su fallecida esposa. En dicho caso acogimos la alegación de una de las partes respecto a que se había practicado un inventario y liquidación de los bienes de la comunidad postganancial, constituyéndose una comunidad ordinaria en todos sus extremos entre el cónyuge viudo y los herederos. *Íd*. pág.

192. Además, el acreedor se limitó a solicitar cualquier derecho, interés o participación que pudiera tener el deudor en el inmueble indiviso. *Íd.* pág. 194.

*A contrario sensu*, en el caso de autos, el peticionario compró por venta judicial un porcentaje concreto del bien inmueble cuando solamente era transmisible la participación del señor Sánchez Claudio sobre la totalidad del patrimonio. Ello por no ser enajenable una participación concreta sobre el bien para satisfacer una deuda privativa sin la debida liquidación de la comunidad que nos compete. Ya luego de liquidada dicha comunidad postganancial, de corresponder al cónyuge viudo una participación concreta sobre el bien, ésta es ejecutable e inscribible. En vista de lo anterior, no procede requerir al Registrador de la Propiedad que inscriba la Escritura que concede al peticionario un porcentaje concreto de la propiedad como pretende.

Por los fundamentos expuestos, se confirma la denegatoria de inscripción.

Se dictará Sentencia de conformidad.

MILDRED G. PABÓN CHARNECO
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

BL Investments Inc.

    Peticionario

      v.

Franklyn Rivera Rivera Registrador de la Propiedad, Sección de Fajardo

    Recurrido

*Recurso Gubernativo*

RG-2008-03

SENTENCIA

San Juan, Puerto Rico, a 4 de marzo de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se confirma la denegatoria de inscripción.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo